Chablbs Lambíase, J.
On November 2,1961, following a public hearing had on July 11, 1961, respondent Board of Appeals denied petitioners’ application of July 7, 1961 for a variance of the provisions of article Y of the Zoning Ordinance of the Town of Brighton, New York, entitled “ Provisions Applicable to Residential Districts ”, and particularly sections 19 and 20, in effect on said dates as it applies to the premises of the petitioners located at 2171 West Henrietta Road, in the Town of Brighton, Monroe County, New York. Specifically, petitioners requested that a variance be granted so as to grant them permission to extend their established nonconforming restaurant use by enlarging the dining room capacity, as well as an addition to the kitchen facilities, together with enlarged parking facilities, all in accordance with the plans submitted with said application.
In this article 78 (Civ. Prac. Act) proceeding petitioners ask “ that this Court review said decision and resolution of the Board of Appeals of the Town of Brighton herein and reverse and annul the same and that an Order be made, directing the granting of the application for the variance as sought and further directing the Town of Brighton to issue a building permit for the erection of the proposed enlargement of the premises owned by the petitioners, and should this Court deem it necessary, to take further testimony and evidence upon this matter pursuant to Section 267 of the Town Law of the State of New York as well as the applicable sections of the Civil Practice Act, together with such other and further relief as to this Court may deem just and proper.”
Petitioners acquired on November 22, 1946 the subject property which is situate on the west side of West Henrietta Road, in the Town of Brighton, New York, having a frontage of approximately 436 feet and varying in depth from 365.11 feet to 188.62 feet, the total area being 2.5 acres. It comprises one entire block between Furlong Road to the south and Doncaster Road to the north. At the time of said acquisition, real property on the east and west sides of West Henrietta Road, to a depth of 150 feet, was zoned commercial. Thereafter, in 1948 and in 1949, a permit to erect a restaurant was issued by the Town of Brighton, to the petitioners, and the real property was improved and a restaurant constructed. Since that time petitioners have continuously conducted such restaurant business on the premises.'
On October 20, 1955 the Zoning Ordinance of the Town of Brighton, New York, was amended by virtue of which property *283 on the west side of West Henrietta Boad in the area wherein petitioners’ restaurant is located was changed from a Commercial Zoning classification to a Class B Besidential District classification, a classification in which land used for commercial or restaurant purposes was not a permitted use. There is no doubt that at the time of said enactment petitioners’ business had been and now is a legal nonconforming use. In fact, respondents concede this, and there is no question, therefore, before us as to the right of petitioners now to operate the restaurant and to use the present structure and facilities therefor.
Upon the enactment of the amendment in October, 1955, the remaining portion of petitioners’ property within the 150-foot strip not then utilized by them for their restaurant business could not lawfully be used for such purpose without a variance, nor could their then existing structure be enlarged for such purpose without a variance. The Zoning Ordinance of the Town of Brighton (art. IV, § 8, subd. [a]) in effect at all times from the time of the filing of the application for a variance herein, provided, and now provides: ‘ ‘ Any lawful non-conforming use may be continued only on the same premises and in the same structure or structures where such use existed at the time the use became a lawful non-conforming use.” (Eff., Jan. 16, 1961.) (Matter of Crossroads Recreation v. Broz, 4 N Y 2d 39, 43; Matter of Gerling v. Board of Zoning Appeals, 6 A D 2d 247, 250.)
Article IV of the Zoning Ordinance, “ General Provisions Applicable in all Districts ”, section 12 (Application to Existing Premises or Structures), at all times from the time of the filing of the application for a variance herein, provided, and now provides: ‘ ‘ Whenever the provisions of this Ordinance in their application to an existing structure or existing premises at the time it takes effect, are unfair or inequitable to the owner or occupant thereof, such person may make a special application to the Planning Board for the exemption of his premises or the structure from all or a portion of the provisions of this Ordinance. The Board, after hearing all parties interested, may in its discretion, alter or vary in whole or in part, the strict application of the provisions of this Ordinance as applied to the structure or premises of the applicant, giving due consideration to the general purposes and intent thereof, and the structures or premises of surrounding owners or occupants. Such determination may be reviewed by the Town Board on the motion of any owner or occupant aggrieved thereby.” (Town Law, § 267, subd. 5 [both]). By section 50 of article X of said Zoning *284 Ordinance, 11 The Planning Board and the members thereof are hereby vested with the powers and duties of the Board of Appeals as set forth in Chapter 634 of the Laws of 1932, Article 16, Section 267.”
The plans indicate that petitioners desire to change their existing restaurant structure by changing the entrance way and design of the adjacent windows, by modifying the roof and window design of the one-story northerly extension, by constructing a new southerly extension to match the one on the north, and by enlarging the structure in the rear.
An examination of the record and of the exhibits discloses that the property of petitioners lying to the south of the restaurant structure is vacant, as is their property to the north of said structure running to Doncaster Bead. Part of petitioners’ property has been blacktopped, and concededly has been used for the parking of automobiles incidental to the conduct of the restaurant business. However, up to the time of the application herein, all of petitioners’ property to the north of the restaurant structure had not been used for the parking of automobiles, or for any other use or uses incidental to the restaurant business. In fact, most of it had not been thus used. Petitioners claim, however, that from time to time prior to the date of the application for the variance, automobiles had been parked, and at the time of said application were being parked on a grassy area, at least on a part thereof, to the north of the restaurant structure.
In proceedings for a use variance, there are general principles which the courts have followed, and in Matter of Otto v. Steinhilber (282 N. Y. 71, 76) they are stated as follows: “Before the Board may exercise its discretion and grant a variance upon the ground of unnecessary hardship, the record must show that (1) the land in question cannot yield a, reasonable return if used only for a purpose allowed in that zone; (2) that the plight of the owner is due to unique circumstances and not to the general conditions in the neighborhood which may reflect the unreasonableness of the zoning ordinance itself; and (3) that the use to be authorized by the variance will not alter the essential character of. the locality.” Uoncededly, this is the law.
Furthermore, under the Zoning Ordinance herein, the owner must make the same showing of deprivation of reasonable use to justify an extension of an established nonconforming use as he would to justify a variance for a new use. In considering an application for permission to tear down an existing gasoline *285 station and to erect in its stead a modern and much larger establishment, the original structure being an established nonconforming use, the court in Matter of Crossroads Recreation v. Broz (4 N Y 2d 39, 43, supra) reiterated the principles of Otto v. Steinhilber (supra) and held that all three of the conditions as outlined in said case must be shown to obtain such an extension, and at page 42 says: 11 While it is clear here, and no one questions the fact, that the petitioners may continue to operate the gasoline station as it presently exists — because it was devoted to such a use prior to 1945, when the prohibitory zoning ordinance took effect (see People v. Miller, 304 N. Y. 105, 107) —the petitioners may not ‘ enlarge that use as a matter of right ’ (Matter of Chandler v. Corbett, 274 App. Div. 1073, 1074). Were that not so, zoning laws would, in effect, be rendered nugatory and nonconforming parcels, as a result, would assume great values— ‘ a premium would then be the reward for violating the law ’ (Matter of Pisicchio v. Board of Appeals, 165 Misc. 156, 157).” (See, also, Matter of Gerling v. Board of Zoning Appeals, 6 A D 2d 247, supra.)
At the hearing on the application for the variance, petitioners submitted evidence that they had paid $3,500 for their entire property involved herein which was unimproved at the time, and that they had spent $4,000 for development of the site; that they opened their restaurant in 1949 and that since that date had continuously operated the same every day of the week for long hours and for some 8 to 10 months of the year generally closing during November and December each year and reopening in February or March of the next year; that during all this time they had occupied and were still occupying the apartment on the second floor of the restaurant structure; that part of the area has been blacktopped; that they had received no wages or salary during the time of their operation of the restaurant but had received only the net profit of the operation, which net profit has amounted to approximately $15,000 per year in later years; that as of December 16, 1960 petitioners had invested in the land, building and restaurant equipment approximately $66,000; that petitioners should be receiving not only a salary from the business, but also a reasonable retilrn on their investment; that the proposed expansion would increase from 70 to 254 the number of persons who could be accommodated; that the proposed expansion would cure their financial problem; that the cost of expansion would be approximately $99,000; that West Henrietta Road is a highly travelled main highway; that petitioners’ property is bordered *286 on the north and south by streets running east and west off of the West Henrietta Boad; that the best use of the property is for commercial use; that petitioners’ land on a residential basis was of the reasonable market value of about $15,000, and that the same land on the basis of a commercial use was of the reasonable market value of between $70,000 and $80,000; that most of the residential properties in the area were built either during the time that petitioners’ property was located in a commercial zone or during the time that petitioners’ business has been in operation; that their situation is unique; and that they are entitled to the relief asked for.
Objections to the granting of the application were made by property owners at the hearing. It was urged that if the variance were granted, it would result (1) in an increase of traffic; (2) in making petitioners’ business a large enterprise with attendant increase of noise; (3) in a detrimental effect upon the residential character of the area; and (4) it was urged that if petitioners operated their business as it is for 12 months a year, they could increase their profit.
In denying the application, the board made the following “ Besolution Decision ”:
‘ ‘ 1. The denial of the right to use the said property for its best or highest economic use, comparing commercial and residential uses, does not constitute a legal hardship.
‘ ‘ 2. The alleged hardship or practical difficulty based upon the claim that the applicants ’ premises cannot yield a reasonable return, if used for conforming uses only, is not sufficiently supported by evidence of efforts to develop or to sell the premises for conforming uses only.
‘ ‘ 3. The alleged hardship or practical difficulty based upon the claim that there is an unreasonable return from present business operations is not supported by the evidence submitted in connection therewith because, it assumes that there has been good management and an efficient business operation but such claimed unreasonable return may actually result from poor management and an inefficient business operation and the Board of Appeals is not able to evaluate and make judgment in this regard; further, the profit and loss statement and the other evidences submitted in connection with financial return and earnings on investment are based upon part year business operations of from 8 to 10 months in each year, rather than normal full year operations and such evidence does not make allowance for the value of the applicants’ residential use of the premises and further, it appears that after the premises were rezoned from Commercial ‘A’ District to Besidential ‘B ’ District in 1955, *287 which placed the applicants ’ business operations in the category of a pre-existing non-conforming use with the attendant restrictions and limitations applicable to such a use, the applicants have increased and added to their investment in their business operations by approximately 38%, as compared to their investment at the time of the said rezoning, and any present hardship or practical difficulty claim based upon unreasonable return, in so far as it is affected by such increase in investment, would be a self-created hardship.
“ 4. If the requested variance was granted, it would result in a commercial structure approximately three (3) times the size of the present non-conforming structure and would result in a commercial parking area extending across the full width of the premises and up to the abutting side streets, as compared to the comparatively limited present parking area near the present structure permitted under the present non-conforming use, which additional size in structure and vastly increased parking facilities to accommodate a proposed restaurant seating capacity of upwards of 250 customers, as compared to a present customer seating capacity of approximately 70 people, would, in the Board’s opinion, greatly and adversely affect the general and essential residential character of the locality and neighborhood and would have a detrimental affect on property values and the peaceful residential use and enjoyment of premises by abutting and adjacent property owners. ’ ’ (Respondents ’ Answer, par. 15.)
‘ ‘ In order to establish a lack of 1 reasonable return ’, the applicant must demonstrate that the return from the property would not be reasonable for each and every permitted use under the ordinance (Matter of Young Women’s Hebrew Assn. v. Board of Stds. & Appeals, 266 N. Y. 270, 275; Matter of Clark v. Board of Zoning Appeals, 301 N. Y. 86, 90; Matter of Crossroads Recreation v. Broz, supra, p. 45; see, also, Matter of Graham v. Newton, 7 Misc 2d 34, 38).” (Matter of Forrest v. Evershed, 7 N Y 2d 256, 262.) Since the operation of the restaurant, as it presently exists, is a nonconforming use which is suffered to continue because it had been devoted to such a use before the prohibitory zoning ordinance took effect, it is a use which is allowed under the ordinance. Furthermore, article V of the Zoning Ordinance (Provisions Applicable to Residential Districts), section 20 (Class B Uses), now provides, and since the filing of the application for a variance herein has provided, as follows:
‘ ‘ In Class B, no structure or the premises shall be used and no structure shall be erected or altered, which is arranged, *288 intended or designed to be used in whole or in part for other 'than a use permitted in Class A, and the following uses and accessory uses:
“ (1) One story dwelling with a private garage.
“ (2) Playground and recreational structures.
“ (3) Public buildings, public utility buildings, passenger stations and right of way if approved by the Planning Board.”
And section 19 (Class A Uses), now provides and at said other times afore-mentioned provided:
“In Class A, no structure or the premises can be used and no structures shall be erected or altered which is arranged, intended or designed to be used in whole or in part for other than one of the following uses and accessory uses:
“ (1) Single family one and two story or two and one-half story detached dwelling, with private garage.
“ (2) Educational or Religious Building, Fire Station, Town Municipal Building, Police Station, Park and Park Buildings, if approved by the Planning Board.
“ (3) Customary home occupations conducted by persons residing on the premises, which are incidental but not accessory to such residence, including a small professional sign or name plate as the only display of advertising.
“ (4) The leasing to a non-resident of the premises of storage space for not more than two non-commercial motor vehicles in a private garage.
“ (5) Any structure wholly devoted to agriculture or the housing of persons on the premises engaged therein. (Amend. Res. 12/18/40.)
“ (6) Private swimming pool structure, for incidental use to a single residential use of the premises.” (Then follow numerous subdivisions relating to swimming pools which are quite lengthy and which we do not deem essential to our determination herein and, therefore, for economy of space, we do not set them up at length.)
Hence, petitioners have the burden of proving that their property cannot yield a “ reasonable return ” if used for restaurant purposes (as it presently exists) or for any of the uses set forth as “allowed” uses in Class “ B ” Residential District and above set forth (Matter of Forrest v. Evershed, supra).
The denial of the right to use their said property for its best and highest economic use does not constitute a legal hardship (Matter of Crossroads Recreation v. Broz, 4 N Y 2d 39, 46, supra; Matter of Jam Rick Homes v. Young, 28 Misc 2d 561, *289 563; Matter of Glaser v. Larkin, 21 Misc 2d 379, 381; Fusco v. Town of Oyster Bay, 23 Misc 2d 72, 74). As already stated, we are concerned only with whether the petitioners’ property can yield a reasonable return if used only for the purposes allowed in its zoned classification.
In order to succeed in this proceeding, petitioners must meet the burden of establishing that the decision under review is arbitrary and unreasonable and constitutes an abuse of discretion for, absent such proof, the court has no power to substitute its judgment for that of the duly constituted administrative authorities. (Matter of Diocese of Rochester v. Planning Bd. of Town of Brighton, 1 N Y 2d 508, 520; People ex rel. St. Albans-Springfield Corp. v. Connell, 257 N. Y. 73, 81.)
We are constrained to the conclusion that petitioners have failed to show that the land in question cannot yield a reasonable return if used only for a purpose allowed in the zone of its classification (see Matter of Otto v. Steinhilber, 282 N. Y. 71, supra; Matter of Crossroads Recreation v. Bros, supra; Forrest v. Evershed, supra) and particularly because in connection therewith they have failed to meet the requirements of proof laid down in the two last-cited cases. Therefore, since the record does not show that the land in question cannot yield a reasonable return if used only for a purpose or for purposes allowed as zoned, we need not consider the other two elements which are required to prove unnecessary hardship.
Lastly, the point is made by petitioners that an examination of respondents’ return discloses that a petition of Southland Drive Association, containing the signatures of a number of persons in opposition to the application, is included therein as is a memorandum of law of one, Richard J. Elliott, Esq., an attorney,— although his representation in this matter is not anywhere disclosed, — were submitted in support of a denial of the application. Neither the petition nor the memorandum was submitted at the hearing. Exactly when the board received the Southland petition is not known for it is not specifically referred to in the minutes of the hearing, nor does it bear any stamp showing the time of its receipt. The Elliott memorandum bears a time stamp indicating it was received on September 16, 1961, after the hearing was closed. These papers were before the board, and it is not unreasonable to presume that they were considered by it. We agree with petitioners that the receipt of these documents and their consideration by the board was improper. Subdivision 1 of section 267, entitled 11 Board of appeals ” of the Town Law which now reads, and at the time *290 of the hearing herein read, in pertinent part: “ All meetings of such board shall be open to the public. Such board shall keep minutes of its proceedings * * * and shall also keep records of its examinations and other official actions.”
It would seem that the Southland petition and the Elliott memorandum (after representation having been established) should not have been received and considered except at a new public hearing at which all sides would have had the opportunity to have been heard. (Brighton Zoning Ordinance, art. IY, '§ 12; Fulton v. Board of Appeals of Town of Oyster Bay, 152 N. Y. S. 2d 974; Wernert v. McHaffie, 158 N. Y. S. 2d 438; Matter of Blum v. Board of Zoning and Appeals, 1 Misc 2d 668.) To be effective the powers of the Zoning Board of Appeals affecting the property rights of persons subject to its jurisdiction must be exercised in a meeting open to the public. However, the decision of the board, in our opinion, is sustainable without reference to said papers thus improperly received and considered, and, therefore, no prejudice has resulted to petitioners by their being before the board.
Accordingly, the determination of the Zoning Board of Appeals denying petitioners’ application for a use variance must be and hereby is in all respects confirmed, and the petition of the petitioners is dismissed without prejudice, however, to the renewal of their application should they be so advised. (Civ. Prac. Act, § 1300.)