## HOLT-LOCK, INC. *v.* ZONING AND PLANNING COMMISSION OF THE TOWN OF GRANBY

HOUSE, COTTER, THIM, RYAN and SHAPIRO, Js.

Argued March 3—decided May 11, 1971

*Bertlen F. Turner,* for the appellant (plaintiff).

*Charles W. Page,* with whom was *Ernest A. Inglis, Jr.,* for the appellee (defendant).

SHAPIRO, J.  The plaintiff, Holt-Lock, Inc., the owner of ninety-two acres of land in the town of Granby, made application to the defendant zoning and planning commission for a special permit under § 9.4 of the Granby zoning regulations to remove sand and gravel from approximately sixty acres of its land.  A public hearing on the application was held on February 13, 1968, and the defendant commission denied the application on April 23, 1968.  An appeal was taken from the commission's action to the Court of Common Pleas.  The court heard evidence on the issue of aggrievement, on the issue of the disqualification of a commission member, and on the question of the defendant commission receiving evidence subsequent to its public hearing on the plaintiff's application.  The court decided the remaining questions raised in the plaintiff's appeal solely on the record returned by the defendant commission.  The court found the issue of aggrievement in the plaintiff's favor.  The other issues were found for the defendant and the court dismissed the appeal.  From the judgment rendered the plaintiff has appealed.

Various assignments of error, relating to claims that the court found certain facts without evidence

and to a claimed erroneous ruling on evidence, which the plaintiff has not pursued in its brief are treated as abandoned. *Martin* v. *Kavanewsky,* 157 Conn. 514, 516, 255 A.2d 619; *Katz* v. *Brandon,* 156 Conn. 521, 524, 245 A.2d 579.

The plaintiff claims error in the trial court's refusal to find certain facts which it claims are admitted or undisputed. The plaintiff cannot prevail on this issue since the additions it requests involve facts which are immaterial or are neither admitted nor undisputed. Practice Book § 628 (a); *Greenwich Contracting Co.* v. *Bonwit Construction Co.,* 156 Conn. 123, 128, 239 A.2d 519; Maltbie, Conn. App. Proc. § 158.

The second claim of the plaintiff is essentially that the court erred in concluding that the commission had not received evidence subsequent to the public hearing of February 13, 1968, that would render the commission's action illegal. The plaintiff by this claim of error seeks to have this court apply the following rule articulated in *Parish of St. Andrew's Church* v. *Zoning Board of Appeals,* 155 Conn. 350, 358, 232 A.2d 916: "The board could not properly consider correspondence submitted after the public hearing without providing the necessary safeguards guaranteed to the applicants and the public. This means a fair opportunity to cross-examine witnesses, to inspect documents presented and to offer evidence in explanation or rebuttal. *Wadell* v. *Board of Zoning Appeals,* 136 Conn. 1, 9, 68 A.2d 152. Not to do so would deny the applicants the right to be fully apprised of the facts upon which the board is asked to act. *Parsons* v. *Board of Zoning Appeals,* 140 Conn. 290, 293, 99 A.2d 149; *Wunder* v. *Macomber,* 34 Misc. 2d 281, 290, 228 N.Y.S.2d 552; 2 Rathkopf, Law of Zoning and Plan-

ning, p. 44-2." The correspondence which the plaintiff claims should bring into operation the above stated rule consists of a letter dated April 18, 1968, from the secretary of the Granby board of education and reports which were submitted at the request of the defendant commission by Technical Planning Associates subsequent to February 13, 1968. Under the facts of this case, as recited below, the rule does not apply.

The court's finding of facts, which must stand, and the evidence printed in the appendix to the defendant's brief, reveal that the letter of April 18, 1968, was neither accepted by the defendant commission nor considered by it. The findings of fact, which must stand, with respect to the reports from Technical Planning Associates are: (1) Technical Planning Associates were consultants to the defendant commission, not opponents of the plaintiff's application. (2) The material requested of Technical Planning Associates was not evidence for or against the application beyond what the commission had from its own knowledge or adduced at the public hearing on February 13, 1968. (3) The consideration of the reports was solely to aid the defendant commission in determining what conditions it might impose on the granting of the plaintiff's application if it did grant it.

We turn to the plaintiff's claim that the court erred in concluding that the denial of its application by the defendant commission did not amount to a confiscation of its property without due process of law. The court found the plaintiff's property was flood plain land. The plaintiff essentially argues in its brief that it has exhausted its administrative remedies and that the application to its property of the Granby zoning regulations dealing with flood

plain land constitutes the taking of property without compensation and without due process of law in violation of the fifth and fourteenth amendments to the constitution of the United States and in violation of § 11 of article first of the Connecticut constitution.

The plaintiff has prematurely raised the constitutional issue it here seeks to have determined, and we therefore do not consider it. The plaintiff has overlooked § 4.9 of the Granby zoning regulations which provides: "In flood plain land, no building shall be constructed, and no land shall be filled or paved except as a special exception by the Board of Appeals, with due consideration to the effects of such building, fill, or pavement on potential flood conditions affecting the particular premises or other premises." It is apparent from the language of this ordinance that a building may be constructed and land may be filled or paved on obtaining a special exception from the board of appeals. Until this remedy has been exhausted, it cannot be said that the plaintiff has been denied the reasonable use of its property. See *Vartelas* v. *Water Resources Commission,* 146 Conn. 650, 655–56, 153 A.2d 822; see also *Florentine* v. *Darien,* 142 Conn. 415, 428, 115 A.2d 328.

The plaintiff claims that John Burns, a member of the defendant commission, was disqualified to sit on said commission and hence the commission's denial of its application was illegal.

The following facts, as found by the court, are not in dispute. Burns was a member of the Granby conservation commission and its secretary, as well as being a member of the Granby zoning and planning commission. One of the purposes of the conservation commission was to preserve flood plain land in the town of Granby. Prior to the public

hearing of February 13, 1968, the conservation commission met on at least two occasions to discuss the implication of the plaintiff's application. Burns was present at these meetings and took part in the discussions. As a result of these meetings, a letter, dated February 9, 1968, from the conservation commission was presented to the defendant commission at its public hearing on February 13, 1968.[1] No formal request was made by the defendant commission for a report from the conservation commission. Burns was aware of the contents of the letter prior

---

[1] "GRANBY CONSERVATION COMMISSION

February 9, 1968

J. Donald Flannery, Chairman
Zoning and Planning Commission
Town of Granby, Connecticut

Dear Mr. Flannery:

At a special meeting held on January 30, 1968, the Commission discussed the conservation implications of the proposed ground removal operation along the East Branch of the Salmon Brook to be undertaken by Holt-Lock, Inc. The scope and detail of this operation was set forth in a map of the area prepared by Henry Cotton, Surveyor.

The following comments represent the position of The Conservation Commission on the proposal:

1. Competent professional assistance should be secured to determine the probable affects [sic] of the proposed excavation and pond on the natural ecology of the area. Such expert assistance can be obtained from a number of sources, for example: Connecticut Department of Agriculture and Natural Resources, The Department of Fish and Game, etc. Perhaps a qualified hydraulic engineer could comment on the technical aspects of the pond's construction.

2. The open space plan of the Commission, though not yet formally adopted, contemplates the use of the present flood plains and some ridge tops to provide a natural path of circulation throughout the town for both townspeople and wildlife. The spectre of the flood plains becoming a series of open pit mines haunts the Commission.

3. The petitioners state that the area would become a lake for fishing.

a. What kind of fish? The Salmon Brook is one of the more popular trout streams in the state. If trout are to be stocked in the

to the public hearing and was in sympathy with the feelings expressed in it. Charles Katan, a member of the conservation commission, who was present at both of its meetings, was of the opinion that Burns was in general agreement with the letter. Prior to February 13, 1968, Burns had considered the application from a conservation point of view. The trial court specifically found that Burns had not prejudged the plaintiff's application for a sand and gravel permit.

Following the decision of this court in *Low* v. *Madison*, 135 Conn. 1, 60 A.2d 774, which defined the standards demanded of a member of a zoning

pond, is there assurance that such factors as water temperature, natural food, shoreline vegetation, etc., will support trout? Will the discharge from the pond be cold enough so as not to impair the survival of trout in Salmon Brook?

b. Who will be permitted to use the fishing facility and under what circumstances?

c. Will the pond be constructed so as to minimize the likelihood of washouts during spates or floods?

d. If fish other than trout are to be planted, are there adequate safeguards to assure that these fish will not get into the Salmon Brook thereby endangering the trout fishery therein?

e. Will there be a sufficient transfer of water to prevent stagnation?

4. What guarantees of performance are being provided the Town to prevent the blight of an unfinished or poorly maintained area. Further, what assurance is there that the project will be developed as represented by the petitioners?

5. What effect will this proposal have on the water table in that area?

6. Finally, there has been made the implication in some quarters that the proposed project has the tacit approval of the Conservation Commission – this is not so. However, if the questions raised above are satisfactorily answered and the interests of the Town are adequately protected, then the conservation implications of this project might be viewed favorably by this Commission.

Yours truly,

Peter Olin, Chairman
Granby Conservation Commission"

body, the General Assembly adopted in 1951 what is now § 8-11 of the General Statutes. Section 8-11 provides in part: "No member of any zoning commission . . . shall participate in the hearing or decision of the . . . commission of which he is a member upon any matter in which he is directly or indirectly interested in a personal or financial sense." In this case, there is no claim that Burns had a pecuniary interest. As we stated in *Anderson* v. *Zoning Commission,* 157 Conn. 285, 290, 253 A.2d 16, a personal interest is "a personal bias or prejudice which imperils the open-mindedness and sense of fairness which a zoning official in our state is required to possess." Our decisions have repeatedly emphasized that "[n]eutrality and impartiality of members are essential to the fair and proper operation of . . . [zoning] authorities." *Lake Garda Improvement Assn.* v. *Town Plan & Zoning Commission,* 151 Conn. 476, 480, 199 A.2d 162; see *Stocker* v. *Waterbury,* 154 Conn. 446, 453, 226 A.2d 514; *Josephson* v. *Planning Board,* 151 Conn. 489, 493, 199 A.2d 690; *Daly* v. *Town Plan & Zoning Commission,* 150 Conn. 495, 500, 191 A.2d 250.

"The decision as to whether a particular interest is sufficient to disqualify is necessarily a factual one and depends on the circumstances of the particular case." *Anderson* v. *Zoning Commission,* supra, 291; *Armstrong* v. *Zoning Board of Appeals,* 158 Conn. 158, 172, 257 A.2d 799. While we in no way condone the course pursued by Burns, we cannot say, in view of the manner in which this appeal has been presented to us, that as a matter of law the court reached an improper conclusion on the issue of Burns' disqualification. The plaintiff has not challenged in its brief the court's findings that Burns had not prejudged the plaintiff's application nor has

the plaintiff assigned as error or attacked in its brief the following conclusion of the court: "Although a member of the Granby Conservation Commission, Mr. Burns did not have a direct or indirect interest in a personal or financial sense such as would disqualify him from acting as a Plan and Zoning Commissioner."

We turn to the plaintiff's final claims that the action of the defendant commission in denying its permit was illegal, arbitrary and in abuse of the discretion vested in it. The plaintiff argues in its brief that § 9.4 of the Granby zoning regulations is a mandatory ordinance. We need not decide this question since it would not affect the final result. See *Covino* v. *Pfeffer*, 160 Conn. 212, 217, 276 A.2d 895. The plaintiff's claims of illegal and arbitrary action by the commission are embraced in its following two claims of law which were overruled by the trial court: (1) The reasons for denying the plaintiff's application were not supported by the evidence and (2) the commission's denial was based on considerations other than what it was required to consider under the Granby zoning regulations.

Where a zoning authority states the reasons for its action, the question on appeal is simply whether the reasons assigned are reasonably supported by the record and whether they are pertinent to the considerations which the zoning authority is required to apply under the zoning regulations. *Zieky* v. *Town Plan & Zoning Commission*, 151 Conn. 265, 267–68, 196 A.2d 758. In making a determination on a special permit, a zoning authority is to consider the standards provided in the zoning regulations themselves and the conditions necessary to protect the public health, safety, convenience and property values. See General Statutes § 8-2; *Powers* v. *Com-*

*mon Council,* 154 Conn. 156, 161, 222 A.2d 337; *Summ* v. *Zoning Commission,* 150 Conn. 79, 91, 186 A.2d 160. One of the reasons given by the commission for the denial of the plaintiff's application was that the requested removal of sand and gravel "would have a detrimental effect on the surrounding residential property." This reason is in accord with § 9.4.6 of the Granby zoning regulations. The remaining reasons assigned by the commission can be said to be in accord with § 9.1 of the Granby zoning regulations. "The commission was entitled to take into account its own knowledge of the local conditions, and the burden rested on the plaintiff to show that the commission acted improperly." *Cameo Park Homes, Inc.* v. *Planning & Zoning Commission,* 150 Conn. 672, 679, 192 A.2d 886; see *Rocchi* v. *Zoning Board of Appeals,* 157 Conn. 106, 110, 248 A.2d 922; *Nielson* v. *Zoning Commission,* 149 Conn. 410, 413, 180 A.2d 754. The plaintiff has not satisfied the burden resting upon it.

There is no error.

In this opinion the other judges concurred.