[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I
This is an appeal of a decision by the defendant, the Planning Zoning Commission of the Town of Cheshire, ("the PZ"or "the commission"), denying in part the application by the plaintiff, Cheshire Care, LLC ("Cheshire Care") for a modification of an existing special permit authorization with reference to property in the Town of Cheshire, known as 1150 South Main Street.
On or about December 11, 1996, the defendant was granted a special permit for construction of an assisted living residential facility of 75 elderly residential units.
On or about December 9, 1997, the plaintiff filed with the defendant its application for a modification to its existing special permit.
On or about January 12, 1998, and continuing on February 9, 1998, the defendant PZ held a public hearing on said application.
On or about March 23, 1998, the defendant PZ issued its decision, denying in part and granting in part, said application.
On or about March 26, 1998, the defendant PZ published notice of its decision in a local newspaper.
On or about April 21, 1998, and pursuant to General Statutes, CT Page 6751 Section 8-8, the plaintiff filed its appeal of said decision and then, on June 11, 1998, its amended appeal, in response to which the defendant filed its answer on July 31, 1998.
A hearing on the said appeal opened on December 10, 1998, at which time the defendant's motion to file an amended answer to add a special defense was granted; the hearing was continued to January 28, 1999, when the plaintiffs motion to supplement the record was granted and then to March 3, 1999, when the defendant's motion to dismiss for lack of jurisdiction was denied, aggrievement was found for the purpose of taking this appeal, and the hearing was completed.
 II
The subject property is in an R-20A zone. An assisted living residential facility is a permitted use in an R-20A zone, conditioned on obtaining a special permit from the PZ. The application at issue is the fifth such application filed by the plaintiff in connection with its development of an assisted living facility at 1150 South Main Street. A brief review of these applications is useful for understanding the current situation and the positions of the parties.
Cheshire Care first applied to the PZ in May of 1996, seeking a special permit for construction of a three-story assisted living facility, comprising 100 hundred living units for 110 occupants and covering 92,540 square feet. This application was withdrawn, and a second application was filed in June, 1996.
In the second application Cheshire Care sought approval for construction of a three-story facility, covering 91,370 square feet, again for 100 units housing 110 people. This application was denied by vote of the PZ, in September, 1996.
The plaintiff returned in November, 1996, filing a third application for special permit, seeking approval for a two-story facility, covering 64,021 square feet, comprising 75 units for 79 residents. This application was approved by the PZ on December 11, 1996.
In October, 1997, the plaintiff filed a fourth application seeking modification of its special permit to increase the number of units from 75 to 92, and the number of residents from 79 to 94, on a square footage of 81,021. This application was withdrawn CT Page 6752 in November, 1997, and on December 15, 1997 Cheshire Care filed the application, subject of this appeal, basically seeking the same modifications as in the fourth application; an increase to 92 units, 94 residents and 81,021 square feet. Cheshire Care proposed to maintain the exterior side (facing Main Street) at two stories, modifying the pitch of the roof on the interior side of the building to permit the addition of a third floor on the interior side of the building. Cheshire care also sought approval to modify architectural details on the facade. As indicated, the PZ voted to deny the proposed expansion while approving the proposed modification of architectural details on the Main Street facade of the building.
The applicant's stated reason for seeking the said increases was that an analysis of the project following the December, 1996 special permit approval revealed the increases were necessary to make the project economically viable. The latest proposal sought to satisfy concerns previously expressed by the PZ as to size, appearance, and intensity of use. The defendant PZ argues it was entitled to take into consideration evidence admitted at hearings held on the plaintiff's prior applications, as well as PZ members' knowledge of the project and its regulatory history. The applicant asserts that the PZ's consideration is limited to the subject application and the record established in the course of the proceedings addressing said application, and that the application, meeting all the requirements for special permit approval, must be granted. While the stakes appear to be substantial for the applicant, the issues appear straightforward: May the defendant utilize the record of related prior proceedings and members' knowledge of same in reaching its decision on the subject application? Is there substantial evidence in the record to support the defendant PZ's decision to deny the subject application?
The court finds that the defendant PZ and its members were entitled to take into consideration the record of prior proceedings related to the subject project, and utilize members' knowledge of such proceedings and the project's history. The court finds, for reasons stated below, that there was substantial evidence in the record to support the PZ's decision to deny the subject application for modification of the plaintiffs special permit.
 III CT Page 6753
Judicial review of a PZ's decision is limited to a determination of whether its decision was arbitrary, illegal or in abuse of its discretion, Whitaker v. Zoning Board of Appeals,179 Conn. 650, 654. A PZ is vested with a large measure of discretion, and the burden of showing that the agency has acted improperly rests upon the one who asserts it, Mario v. Fairfield,217 Conn. 164, 169. Courts are not to substitute their judgment for that of the board and decisions of local boards will not be disturbed as long as honest judgment has been reasonably and fairly exercised after a full hearing, Torsiello v. Zoning Boardof Appeals, 3 Conn. App. 47, 49. Courts allow zoning authorities this discretion in determining the public need and the means of meeting it, because the local authority lives close to the circumstances and conditions which create the problem and shape the solution, Burnham v. Planning Zoning Commission,189 Conn. 261, 266 (citation omitted).
In considering an application for a special permit a PZ acts in an administrative capacity, Irwin v. Planning ZoningCommission, 244 Conn. 615, 626. When so acting, a PZ's function is limited to a determination whether an applicant's proposed use is one which satisfies the standards set forth in the regulations and statutes, (citation omitted), Kaufman v. Zoning Commission,232 Conn. 122, 150. While a PZ does not have discretion to deny a special permit when the proposal meets the standards, it does have discretion to determine whether the proposal meets the standards set forth in the regulations, Irwin v. Planning Zoning Commission, supra, at 628. "If, during the exercise of its discretion, the zoning commission decides that all of the standards enumerated in the special permit regulations are met, then it can no longer deny the application. The converse is, however, equally true," Id.
In its decision, the subject of this appeal, the PZ, stated reasons for its denial of the subject application. In situations in which the zoning commission does state the reasons for its action, the question for the court to pass on is simply whether the reasons assigned are reasonably supported by the record and whether they are pertinent to the considerations which the commission is required to apply under the zoning regulations, Id., at 629 (citation, quotation marks, omitted). The agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given, Id. (citation, quotation marks, omitted). When, as here, the agency acts in an administrative capacity, the evidence to CT Page 6754 support any such reason must be substantial, Huck v. InlandWetlands Watercourse Agency, 203 Conn. 525, 540. The "substantial evidence" standard requires enough evidence to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury, Kaufman v. Zoning Commission, supra, at 151.
 IV
The PZ stated its reasons for denying, in part, the subject application, as follows:
"The Commission finds that the increases in building square footage, number of units, and number of occupants do not advance the purposes of Section 40 of the Cheshire Zoning Regulations and are not in accordance with the public convenience and welfare and are, therefore, denied for the following reasons:
1. Section 40,4.1 [The size and intensity of the proposed use.] — The increases in living area, number of units, and number of occupants represent substantial increases over that approved by the Commission in December of 1996 and inappropriately intensify the use.
2. Section 40.4.2 [The proximity of the same or similar use which would unduly concentrate types of uses in a particular zone or vicinity in a zone (district).] — The use proposed is immediately proximate to the Elim Park elderly facility . . . and the . . . "Southwick" elderly facility . . . Elim Park was approved in 1985 for 208 similar units and Southwick was approved for 203 units. These three facilities already concentrate similar uses in one area of Town.
It was the Commission's determination regarding Cheshire Care, L.L.C.'s second application that approving Laurel Gardens for 100 units would result in "undue concentration" of similar types of uses, and that application was denied. The applicant specifically recognized the Commission's continuing concern with the number of units and occupants when it resubmitted its third application. The transmittal letter of that application specifically commented that the number of units was reduced from 100 to 75 to respond to concerns raised by the Commission regarding the number of units. The same conclusion as to "undue concentration" applies to approval of these 94 [sic] units sought by Cheshire Care, L.L.C. CT Page 6755
3. Section 40.4.7 [The nature of the surrounding area and the extent to which the proposed use and its features and appearance will be in harmony with the surrounding area, including the effect upon property values in the neighborhood.] The nature of the surrounding area is characterized, in large part, by the Elim Park and Southwick facilities. The concentration of these three similar, large-scale uses, in the Commission's opinion, appear to overwhelm the residential character of the neighborhood as a whole. Without avoiding undue concentration of these similar uses, the result would be a discordant neighborhood, in which property values are jeopardized.
4. Section 40.4.11 [The effect of the proposed use on the purpose and intent of these regulations (Comprehensive Plan) and the Plan of Development of the Town.] — The Cheshire Plan of Development sets as goals for the Commission to reduce the cost to the community of haphazard residential growth and to provide a balance and variety of housing types and styles, offering a wide choice to the prospective resident. Approval of additional units within Laurel Gardens will result in an imbalance and undue concentration of similar uses within the area, thus reducing the housing choices available to the prospective resident in the neighborhood and resulting in haphazard growth.
It is the plaintiff's position that there is not sufficient evidence in the record to support any of the reasons stated by the PZ for its denial. For reasons indicated below, the court finds that the plaintiff has failed to sustain its position by a fair preponderance of the evidence.
 V
In its memorandum of law in support of its appeal (p. 21) and at closing argument the plaintiff asserted that it was unfair and inappropriate for the defendant to include in the Record "exhibits, transcripts, and minutes from prior applications for this Property and others to muster some semblance of evidence supporting its denial". The court is unpersuaded. First, no motion was filed with the court, challenging the admission of the Record or any specific items of same. Second, the record of proceedings regarding the instant, December 5, 1997, application is replete with references by both sides to prior applications, testimony and decisions with reference to the subject property, CT Page 6756 notably the proceedings leading to the December, 1996 approval of special permit. Third, it would defy common sense to limit the PZ of a consideration of the application for modification in isolation, without reference to the special permit to be modified, and its history. On appeal, a trier would be hard-pressed to understand the issues, and to assess the positions of the parties without familiarity with the prior proceedings of the PZ regarding the plaintiffs efforts to bring Laurel Gardens into being. Fourth, it is axiomatic that agency members may rely on their own personal knowledge of the property the subject of an application, prior applications relating to the same property and conditions in the community, in reaching a decision on an application, Fuller, Land Use Law and Practice (Conn. Prac. Vol. 9), S.21.5; Holt-Lock, Inc. v. Zoning Planning Commission,161 Conn. 182, 191; inclusion of the record of past proceedings is of assistance to the court in determining the nature and scope of PZ members' knowledge of the subject property and to determine the basis of the commission's judgment as to the impact of the proposed modifications on the neighborhood. Fifth, at its regular meeting of December 15, 1997, at the request of a member, copies of the record of the prior proceeding approving a special permit for this project were directed to be distributed to commission members so they could take that record into consideration in considering the proposed modification (ROR 217, p. 207). The court finds that the commission was entitled to utilize the record of the prior proceedings leading to the issuance of the special permit and that such record was properly incorporated by reference in the proceedings leading to denial of the subject application for modification of special permit.
 VI
As stated, the modifications proposed included an expansion of the floor area of the building from 64,201 square feet to 81,201 square feet; increase of living units from 75 to 92; increase in residents from 79 to 94, as well as five additional parking spaces.
At the January 12, 1998 hearing various representatives of the applicant offered detailed explanations of the modifications proposed, addressed what the plaintiff felt might be concerns of commission members, regarding the addition of square footage, living units and residents, the appearance of the building as modified, staffing levels, concerns regarding intensification of usage, increased traffic and the impact of the project as CT Page 6757 modified. The thrust of the plaintiffs presentation was that the proposed modifications would have little or no impact on the intensity of the proposed use, on the building's appearance from Main Street, on staffing, on vehicular traffic, including visitors, commercial deliveries, and staff travel; on the neighborhood and the community.
The plaintiff failed to persuade the defendant PZ that the proposed modifications would have little or no impact. The PZ, in voting to deny the said application for modification, rejected the plaintiffs claims of little or no impact. The PZ found that the proposed increases "do not advance the purposes of Section 40 of the Cheshire Zoning Regulations and are not in accordance with the public convenience and welfare . . .".
It is uncontroverted that the proposed modifications envisage an increase in square footage of some 17,000 square feet, in living units, of 17; and of residents, of 15. This is record evidence, on which a PZ may base a decision. Commission members are not required to accept the assurances of the plaintiffs representatives, and may rely on their own knowledge of the situation, including knowledge derived from prior proceedings involving the Laurel Gardens project. The court finds that the defendant PZ, in approving the plaintiffs 1996 application for special permit, determined that the appropriate size and level of intensity of use of the project to be 64,021 square feet, 75 living units and 79 residents.
Reasonable persons may differ as to the impact of the additions proposed, but such additions may reasonably be deemed significant and constitute substantial evidence in the record to support the PZ's conclusion that the proposed modifications "inappropriately intensify the use", in violation of Regulations, Section 40.4.1.
Similarly, there is substantial evidence in the record to support the PZ's conclusion that the proposed modifications would constitute "undue concentration" of similar uses in the district. While the proposed increases appear modest when Laurel Gardens is viewed in conjunction with the Elim Park and Southwick projects, it is precisely the PZ's function to examine proposals of growth or expansion and determine which increment renders a concentration "undue". This the PZ has done. The fact that the proposed increases are within the maximum allowed by the regulations is of no moment; the PZ has the discretion to CT Page 6758 determine what concentration of use is appropriate to a given site or a given district, within the maximum allowed by formula,Realty Development Corporation v. Planning ZoningCommission, 222 Conn. 607, 612; Regulations, Section 40.1. Based on the same record evidence, the PZ could reasonably conclude that this undue concentration of similar uses was in conflict with the Cheshire Plan of Development and Section 40.4.11.
On the contrary, in stating that "the concentration of these three similar, large-scale uses [Elim Park, Southwick and Laurel Gardens]. . . . appear to overwhelm the residential character of the neighborhood as a whole", the commission appears to be lamenting a fait accompli, rather than stating a consequence of approval of the pending application for modification of special permit. There is nothing in the record sufficient to support the conclusion that approval of the proposed modifications would result in "a discordant neighborhood in which property values are jeopardized". This reason for denial of the said application could not stand alone.
 VII
The court finds that there is substantial evidence in the record to support one or more of the reasons stated by the defendant for its denial of the subject application. The plaintiff has failed to establish, by a fair preponderance of the evidence, that the defendant PZ acted illegally, arbitrarily and in abuse of its discretion in denying the subject application to modify special permit.
Accordingly, the appeal of Cheshire Care, LLC is dismissed, and judgment may enter in favor of the defendant the Planning 
Zoning Commission of the Town of Cheshire.
By the Court,
Downey, J.