ROMAN WASICKI ET AL. *v.* ZONING BOARD OF THE CITY OF STAMFORD ET AL.

HOUSE, C. J., RYAN, SHAPIRO, LOISELLE and FITZGERALD, Js.

Argued March 8—decided May 24, 1972

*Julius B. Kuriansky,* for the appellants (defendant Newfield Associates et al.).

*Theodore Godlin,* assistant corporation counsel, with whom, on the brief, was *J. Robert Bromley,* corporation counsel, for the appellant (named defendant).

*Allan S. Mall,* with whom, on the brief, was *Abraham D. Slavitt,* for the appellees (plaintiffs).

Ryan, J. On August 5, 1969, the defendant Newfield Associates, hereinafter referred to as Newfield, as owner, and the Franchise Realty Interstate Corporation, hereinafter referred to as Franchise, filed application No. 69-024 requesting approval to amend site plans for a restaurant in the Newfield Green

shopping center in the city of Stamford originally approved by the defendant zoning board of the city of Stamford on September 25, 1968, under application No. 68-028. The applicants sought approval for the relocation of a restaurant in the shopping center. On the granting of the application the plaintiffs appealed to the Court of Common Pleas and from the judgment of that court sustaining the appeal the defendant board and the defendants Newfield and Franchise have appealed to this court.

The plaintiffs own real property in the immediate vicinity of the Newfield Green shopping center, which is located on the easterly side of Newfield Avenue. The defendant Newfield is the owner of the premises on which the shopping center is located. It is situated in a B-D "Designed Business District" as defined in § 9 of the Stamford zoning regulations. On July 29, 1964, the defendant board approved the application of Newfield to construct the shopping center on the premises. One of the uses authorized by the decision of the board was the operation of a restaurant. Section 9-D-1 of the zoning regulations requires a public hearing concerning board approval of the location of all buildings in a designed district. On September 25, 1968, the board approved the location and design of a restaurant which was to be erected by Newfield for the defendant Franchise in the southerly section of the shopping center. The prospective lessee was a national restaurant chain known as McDonald's. On March 17, 1969, Newfield applied to the board for permission to relocate the restaurant building in the northerly area of the shopping center, directly adjacent to a gasoline filling station in the shopping center. This application was denied on the ground that the original site was appropriate and that the new location would conflict

with the existing gasoline filling station with respect to traffic flow. Thereafter, on August 5, 1969, Newfield filed a new and revised application (No. 69-024) for relocaticn of the restaurant. Pursuant to § 9-D-1, the board held the required public hearing on the application on September 10, 1969. Property owners in the area voiced substantial opposition to the application at this hearing. The board first considered the new application in an executive session on November 12, 1969. The minutes of that session contained statements that Newfield had failed to comply with a number of the conditions originally imposed by the board in connection with the approval of the site for a shopping center in 1964. The Stamford building inspector was in attendance at the meeting and recommended to the board that the fastest way to get the applicants to comply with these conditions would be for them to meet with the board and to tell them that the board would not consider approving any additional requests for the shopping center until they complied with all requirements set forth in the original approval. The board then voted to defer action on the application. November 19, 1969, was set for an executive session in order to meet with Harold Hoffman, one of the Newfield partners and with the attorney for the applicants. Both the attorney and Hoffman appeared at this meeting at the request of the board. Neither the plaintiffs nor any of the opponents of the application were given notice of, or an invitation to attend, the November 19 session. At the meeting, an extended colloquy took place between the board and Newfield's representatives concerning numerous failures of Newfield to satisfy the various conditions imposed at the time of the board's approval of the original shopping center. The Newfield representatives offered explanations

for the defaults and, in some instances, promised corrective action. A number of conditions previously prescribed were discussed including excessive use of signs on the exterior or interior side window glass in stores; the use of loudspeakers and other noise-making devices; exposed storage of refuse and discarded material; merchandising and storing of products outside the buildings; and the failure of Newfield to complete the presently existing northend wall of the shopping center with finished brick masonry, or to complete construction of the remainder of the building as originally approved, within one year and nine months from March 9, 1967, which would be November 9, 1968. After the Newfield representatives left the meeting a majority of the board voted to approve application No. 69-024 subject to five major conditions: (1) the installation of a traffic control system at one of the exits; (2) the erection of a brick wall between the restaurant and the gasoline filling station; (3) certain limitations on exterior lighting; (4) the restaurant to be limited to "sit-down" customers only; and (5) compliance with conditions numbered 1 through 6 of the board's certificate of approval under application No. 68-028. The final limitation was that the restaurant should comply with paragraph 9 of the Stamford zoning regulations pertaining to "Designed Districts." On these facts the court concluded, inter alia: (1) that the executive session of November 19, 1969, wherein Newfield's representative attempted to enlist support for the removal petition (No. 69-024) was an extension of, and a supplement to, the public hearing of September 10, 1969; (2) that at the executive session of November 19, 1969, the defendant Newfield was permitted to press its substantial and partisan interest in the ultimate decision on the defendant board, to

the exclusion of the plaintiffs; (3) that fundamental justice and fair dealing required that the plaintiffs and other opponents be afforded an invitation to the November 19 session and there given an opportunity to present counter-evidence or cross-examine Newfield's witnesses; (4) that the November 19 meeting was the substantial and predominant factor in overcoming the hesitancy of the board and in persuading it to reverse its previous decision. The court concluded that this conduct violated the letter and spirit of the public hearing requirement of § 9-D-1 of the Stamford zoning regulations.

The defendants urge that the defendant board in approving the relocation of a restaurant in the designed business district, was acting in its legislative capacity and was entitled to take into consideration knowledge acquired through sources other than a public hearing. In numerous cases we have held that the function of creating zones and adopting regulations is essentially legislative. Here, the defendant board was not creating zones or adopting regulations but was exercising its function of approving or disapproving an amendment to a site plan permitting the relocation of a restaurant, and in so doing was acting in an administrative capacity. *J & M Realty Co.* v. *Norwalk,* 156 Conn. 185, 190, 239 A.2d 534; *Forest Construction Co.* v. *Planning & Zoning Commission,* 155 Conn. 669, 674, 236 A.2d 917. Under the provisions of § 9-D-1 of the regulations a public hearing on the application was mandatory.

Newfield and the applicants' attorney appeared at the executive session of the defendant board on November 19, 1969. Members of the board told them that the board "would like to discuss some items that have not been complied with by the owner of the Newfield shopping center," and informed them that

there had been criticism from homeowners in the area. A member of the board added, "You have heard some of them at the public hearing." Another board member said, "Whenever you come before the Board with an application, the homeowner's [sic] oppose it and bring out the fact that you never completed the building." It is obvious that the board was considering the complaints of adjoining property owners made at the public hearing. The appendices to the briefs do not contain the testimony of homeowners in the neighborhood at the public hearing. Since it is obvious from the record that the board was considering this in its discussion with the representatives of Newfield, we should know the nature and extent of the complaints which were made. What transpired at the public hearing is of decisive importance on this appeal. We have, therefore, examined the transcript on file as permitted by § 721 of the Practice Book "to supplement or explain" the evidence which was printed in the appendices. This examination discloses that one of the chief complaints of witnesses opposed to the granting of the application was that this is a "half-finished shopping center." A witness said that one-half looks pretty well and the other "looks like a dump." One man who lives behind the shopping center said his yard is loaded with beer cans, whiskey bottles, paper and junk. There was testimony to the effect that two other buildings have never been completed and now the applicants are asking for permission to erect another building. Evidence was offered that there was traffic congestion in the streets and improper drainage, resulting in flooding.

The board could not properly consider evidence submitted after the public hearing without providing the necessary safeguards guaranteed to the appli-

cants and the public. This means a fair opportunity to cross-examine witnesses, to inspect documents presented and to offer evidence in explanation or rebuttal. *Waddell* v. *Board of Zoning Appeals,* 136 Conn, 1, 9, 68 A.2d 152. Not to do so would deny those opposing the application the right to be fully apprised of the facts on which the board is asked to act. *Parish of St. Andrew's Church* v. *Zoning Board of Appeals,* 155 Conn. 350, 358, 232 A.2d 916; *Wunder* v. *Macomber,* 34 Misc. 2d 281, 290, 228 N.Y.S.2d 552; 2 Rathkopf, Law of Zoning & Planning (3d Ed.), p. 44-2.

The applicants urge that the minutes of the meeting indicate that there was only one brief allusion to the present application, No. 69-024, as follows: "Mr. Lyle asked, 'Have you ever explored the possibility of putting the McDonald's restaurant at the north end of the shopping center?' Mr. Hoffman replied, 'They wanted to be near the street.' Mr. Kuriansky added, 'It is going to be a conventional restaurant.'"

The applicants claim that there is nothing in the minutes to indicate that this application "was on the table for discussion" while the representatives of Newfield were present. We are unable to agree with this. It is quite obvious that the application was not only the inducing cause of this meeting but that it was involved throughout the discussion and in the explanations and promises of the Newfield representatives concerning the fulfillment of conditions which they were already under obligation to perform. The applicants were permitted to explain away and make further promises on matters which were properly raised at the public hearing.

The board discussed many of the matters raised at the public hearing with the representatives of the

applicants. There was no notice to those opposing the application nor were these people given an opportunity to participate in a hearing. It is quite clear that the board was deeply concerned about the failure of the applicants to fulfill the conditions previously imposed by the board. This is a proper matter of concern to the board but the method of attaining the objective was improper. The opponents of the application were not informed of the evidence presented at the executive session nor were they given opportunity to offer evidence in rebuttal. Since this took place in an executive session of the board, the purpose and objectives of a public hearing were defeated.

The conclusions of the trial court cannot be disturbed.

There is no error.

In this opinion the other judges concurred.