[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs, Terry and Patricia Tevis, appeal from a decision of the Planning Zoning Commission of the Town of Wilton (the "Commission") conditionally approving defendant David Dibner's application for a "conservation subdivision." (See Wilton Zoning Code 29-12).
The defendant David Dibner ("Dibner"), trustee of the Dibner Trust, filed an application for a conservation subdivision. On September 18, 1989, after giving due notice the Commission held a public hearing regarding Dibner's application.
Conn. Gen. Stat. 8-26 authorizes the Commission to grant application subdivisions. On November 20, 1989 the Commission approved Dibner's application with 46 conditions. (Record Exhibit hereinafter "RE", No. 5). Notice of this decision was published in The Wilton Bulletin, a weekly newspaper, on November 29, 1989. (RE, No. 3). The court finds this notice of the decision was published within the time limits established in Conn. Gen. Stat. 8-26.
The plaintiffs, pursuant to Conn. Gen. Stat. 8-8 and 8-28, appealed the Commission's decision to the superior court in the Judicial District of Stamford/Norwalk at Stamford. A sheriff properly served the defendants on December 5, 1990. Therefore, the appeal is timely. See Conn. Pub. Acts No. 90-286 (1990) (appeal is timely if service of process occurs within fifteen days after notice of the decision is published). In accordance with Conn. Gen. Stat. 8-8 (c), the plaintiffs provided a recognizance with surety to the defendants. (RE, No. 2). Dibner filed an answer on February 6, 1990 and the Commission filed its answer on February 13, 1990. Additionally, the plaintiffs and defendants filed supplemental briefs.
A. Aggrievement
Any person owning land which abuts, or is within a radius of one hundred feet of any portion of land that is the subject of a zoning board's decision is deemed statutorily aggrieved. See Conn. Gen. Stat.8-8 (a) and 8-28. "Abutting landowners or landowners within a radius of one hundred feet of the land involved in any decision of a zoning board are considered automatically aggrieved and have standing to appeal a decision of a zoning board without having to prove aggrievement." Smith CT Page 1101 v. Planning Zoning Board, 203 Conn. 317, 321 (1987). "Unless the plaintiff alleges and proves aggrievement, his case must be dismissed."
Fuller v. Planning Zoning Commission, 21 Conn. App. 340, (1990) (citation omitted).
The plaintiffs are owners of premises located at 9 Woodway Lane in Wilton, Connecticut. (RE, No. 59, p. 53). The defendant Dibner is the owner of land located at 23 East Meadow Road and Woodway Lane in Wilton. (RE, No. 59, p. 2). The plaintiffs claim that their land abuts the property which is the subject of an application for a conservation subdivision. (Plaintiffs' trial brief, p. 2). At the hearing on appeal, held on October 24, 1990, the plaintiff, Patricia Tevis, testified that she and her husband have owned their property for two years. She also testified that they owned the property at the enactment of the conservation subdivision application and their property abuts the land of the subdivision. On cross-examination, the plaintiff admitted that she did not then have a deed. However, both defendants stipulated to the fact that the plaintiffs own the abutting property even though no deeds were submitted. Therefore, the court finds that the plaintiffs are statutorily aggrieved and the court has jurisdiction.
B. Scope of Judicial Review
"Conclusions reached by the commission must be upheld by the trial court if they are reasonably supported by the record. . . . The question is not whether the trial court would have reached the same conclusion but whether the record before the agency supports the decision reached." Primerica v. Planning Zoning Commission, 211 Conn. 85, 96 (1989) (citation omitted). "The trial court may not retry the case or substitute its judgment for that of the agency on the weight of the evidence or questions of fact." Southington v. State Board of Labor Relations,210 Conn. 549, 558 (1989). An "agency's factual and discretionary determinations are to be accorded considerable weight by the courts." Levinson v. Board of Chiropractic Examiners, 211 Conn. 508, 521 (1989). The supreme court has said on many occasions that courts cannot substitute their judgment for the wide and liberal discretion vested in local zoning authorities when they have acted within their prescribed legislative powers. Courts must not disturb the decision of a zoning commission unless the party aggrieved by that decision establishes that the commission acted arbitrarily or illegally. Stankiewicz v. Zoning Board of Appeals, 15 Conn. App. 729, 737 (1988) (citations omitted), aff'd211 Conn. 76 (1989). The trial court has a limited scope of review and the standard of review is whether the agency acted illegally, arbitrarily or in abuse of its discretion or whether the record reasonably supports the Commission's action. Id.
C. Nature of Commission's Function
Pursuant to Conn. Gen. Stat. 8-26, the defendant Commission CT Page 1102 may approve, modify and approve, or disapprove any subdivision application. When approving or disapproving a subdivision plan, the municipal planning commission is acting in an administrative capacity and has no discretion or choice but to approve a subdivision if it conforms to the town's regulations. Reed v. PZC, 208 Conn. 431, 433 (1988) (legislative authority occurs when the commission authorizes a zone change). Here the Commission acted in an administrative capacity not in a legislative capacity when it approved Defendant Dibner's application.
D. Burden of Proof
"The burden of proof to demonstrate that the board acted improperly is upon the plaintiffs." Adolphson v. Zoning Board of Appeal, 205 Conn. 703,707 (1988). (citations omitted) A "party challenging the action of a planning and zoning commission bears the burden of proving that the commission acted arbitrarily or illegally." Blaker v. Planning Zoning Commission, 212 Conn. 471, 478 (1989). "Upon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons." Adolphson, 205 Conn. at 707.
However, when ex parte communications have been at issue, the courts have used a different standard. In Blaker the court concluded "that a planning and zoning commission and an applicant before it would likely possess better information concerning the content of any ex parte communications between them and the effect that such a prohibited communication might have had on the commission's decision." Blaker,212 Conn. at 480.
 [O]nce it has been demonstrated that an improper ex parte communication has occurred, a presumption of prejudice arises. Although this presumption is rebuttable the burden of showing that a prohibited ex parte communication between a commission and an applicant has not prejudiced a party must be allocated to those seeking to uphold the validity of the commission's decision.
Id.
E. Issues on Appeal
Specifically, on appeal the plaintiffs contend that the Commission: (1) granted a waiver of the maximum permitted grade in violation of Conn. Gen. Stat. 8-26 and 14D of the Land Subdivision Regulation of the Town of Wilton (2) violated 29-13A(2), 29-13C and 29-27 of the Wilton Zoning Regulations by approving a thirteen-lot conservation subdivision and lots which do not contain the required average width/depth; (3) approved Dibner's application subject to forty-six conditions, which in effect changed the Dibner's application and the public was not afforded the opportunity to respond (e.g. no new public hearing) and (4) communicated with Dibner's CT Page 1103 representatives after the conclusion of the public hearing and this violated the plaintiffs' due process rights. The defendants contend that the conservation subdivision application satisfied all applicable regulations as to slopes that the conditions were reasonable and within their authority; and that the ex parte communications do not invalidate the defendant Commission's decision.
1. Slope and Grade "Violations"
The plaintiffs contend that Wilton Subdivision Regulation 6.E(2) prohibits any subdivision lots which are rendered useless for building according to sound engineering practices. (Plaintiff's Trial Brief, p. 8). The plaintiffs also allege that Dibner's application violated State Health Code 19-13-B103d(e) because of its slope provisions even though the "Wilton Subdivision Regulations and Zoning Regulations do not contain express provisions limiting the degree of slope which a proposed subdivision lot may contain." (Plaintiffs' Trial Brief, pp. 7-9). The plaintiffs state that "unless the applicant demonstrated to the Commission the ability to place subsurface sewage disposal systems on each of the offending lots within the parameters of sound engineering practices, the Commission could not legally approve the subject application in view of the pertinent standards set forth in the Public Health Code and the Wilton Subdivision Regulations." (Plaintiffs' Trial Brief, p. 11). The plaintiffs acknowledge that additional data and engineering plans would be required before construction could begin on any of the lots but plaintiffs insist that the Commission must determine now whether the lots are useful for building purposes according to sound engineering practices.
"A commission may legally base subdivision application denials on zoning violations inherent in the plan itself as submitted but not on those that are entirely speculative. A subdivision plan that, as submitted, complies with town zoning regulations should not be disapproved on merely inchoate violations." Krawski v. Planning and Zoning Commission,21 Conn. App. 667, 672 (citations omitted). In Krawski, the Planning and Zoning Commission denied the plaintiff's application for a subdivision. After the trial court sustained the plaintiff's appeal, the commission appealed to the appellate court which held that the denial of the subdivision was reasonable because the lots violated the existing zoning regulations. "It is not the proposed use of the lot that violates the zoning regulations but rather its existing topographical features." Id. at 672. Thus, the court upheld the commission's denial of the subdivision plan on the basis of an inherent zoning violation. Id. at 674.
The Commission, at its November 13, 1989 meeting, found Dibner's application to be based on sound engineering principles. A professional engineer and licensed landscape architect testified that septic systems, driveways and houses could be constructed on lots in spite of the steep slopes. (RE, No. 11, attachments two and four; RE No. 59, pp 17-19, 22-26 and 56). The court finds that the Commission's conclusion is reasonably based on expert testimony and the record reasonably supports the CT Page 1104 Commission's action. Furthermore, the defendant Commission took precautions and specifically approved Dibner's application subject to conditions. Condition number 20 requires the design engineer to submit semi-annual reports to the town engineer and town planner regarding the development and progress of the proposed road, drainage systems and other improvements. (RE, No. 4, Cond. 20). The Commission determined and the record supports the finding that lots in Dibner's conservation subdivision conform to sound engineering practices.
The plaintiffs attached 19-13-B103e of the State Health Code to their brief but cited to 19-13-B10-3d(e). Section 19-13-B103d outlines the design requirements for subsurface sewage disposal system. (Plaintiffs' Trial Brief, Exhibit A 19-13-B103e (f)(1)). Section 19-13-B103e states that no subsurface sewage disposal system shall be construed without an approval to construct. Section 19-13-B103e (b)(2)(B) states that certified agents will be approved to investigate, inspect and approve plans for such subsurface sewage disposal systems, which are prepared by a registered professional engineer pursuant to 19-13-B103d(e). (Plaintiffs' Trial Brief, Exhibit A).
Condition number 25, requires that "subsurface sewage disposal systems for Lots 1, 2, 3, 6, 7, 9, 12, 13 and 14 shall be designed by a licensed professional engineer due to steep slope." (RE, No. 4). This condition is consistent with Conn. Gen. Stat. 8-25 and 19-13-B103e and 19-13-B103d of Connecticut's public health code because it addresses the concern as stated in the statute that the sewage disposal system be properly designed to effectively deal with the steep slopes.
The plaintiffs further allege that the Commission on was not legally capable of approving Defendant Dibner's application because the application violated 29-59A of the Wilton Zoning Regulations which mandate that the maximum grade for any driveway shall be 18%. Pursuant to Conn. Gen. Stat.8-26 the commission may waive certain requirement by a three-quarters vote of all the members of the commission. See also Krawski,21 Conn. App. at 673. Condition number 10 waives the maximum permitted grades and allows a two percent increase. (RE, No. 4: maximum secondary street grade of 12% instead of 10%; maximum circle grade of 7% instead of 5%). "The Town Engineer and Staff have looked at the grades and said it will be all right if the required grades are waived." (RE, No. 6, para. 2). The professional engineer testified that sound engineering practices justified the waiver. (RE, No. 11, attachment two, p. 4). This waiver was approved by three-fourths vote of the commission. (RE, No. 6; RE, No. 4, Cond. 10). The defendant commission reasoned that this would substantially reduce the excavation filling the other earth disturbances necessary for the improvement of the subject property. (RE, No. 4, Cond. 10).
Unlike Krawski, the commission in this case determined that the lots are buildable and they do not violate any zoning regulations. The "commission had discussed the severe slopes on some lots of the conventional platting but noted that these slopes do not disqualify the lots because CT Page 1105 there are no `performance zoning' requirements in the subdivision regulations." (RE, No. 6). "Nothing in the empowering statute or the town's regulations require the commission . . . to postpone the decision until the commission has before it an application for a building permit." Krawski, 21 Conn. App. at 674.
The approval of a subdivision application is merely a first step; the defendant Dibner must comply with the defendant Commission's conditions and the appropriate regulations of other state and local agencies prior to construction. Although septic system designs and health approval must be obtained prior to approval for building permits and construction on the property, these factors are not prerequisites to the approval of the conservation subdivision application. The defendant Commission's approval of the conservation subdivision took into consideration that it would be used for building purposes, and that this could be done without danger to the health or the safety of the public. This decision was in compliance with Conn. Gen. Stat. 8-25 (a). The defendant Commission, based upon the record, had enough evidence to determine that the conservation subdivision was a feasible plan since the design of the lots conformed to sound engineering practices and health concerns.
2. Maximum Number of Building Lots and Minimum Width Requirements Pursuant To Wilton Zoning Regulations 29-13 (A)2, 29-13C and 39-27.
(a) 29-13A(2)
The plaintiffs claim on appeal that the number of building lots permitted in a conservation development shall not exceed what the Commission determines could reasonably have been created under applicable zoning and subdivision regulations of the town in a R-2A district. (Plaintiffs' Trial Brief, p. 7). Section 29-13A of the Wilton Zoning Regulations states:
 A conservation development shall conform to all of the following standards and conditions, in addition to any other generally applicable requirements of these regulations. . . . The maximum number of building lots permitted in a conservation development shall not exceed the number which the Commission determines could reasonably have been created under applicable zoning and subdivision regulations of the town in an R-2A District.
Thus, the plaintiffs argue that the approval of a thirteen-lot subdivision was impermissible based on Wilton's Zoning and Subdivision regulations.
The minutes of the Commission's October 30, 1989 meeting show that "the consensus favored Conservation Development, because it affords a greater control, but with fewer lots." CT Page 1106
(RE, No. 8, p. 2). In the minutes of the Commission's November 13, 1989 meeting, "Commissioner Nichols asked if the Commission had found 14 lots were feasible in the conventional platting. Mr. Juretus said no, only 13." (RE, No. 6, p. 2). Mr. Juretus, Wilton's Town Planner, based his comments on his staff report which stated that "Lot #5 does not meet lot width or setback requirements as per section 29-13.C of the Zoning Regulations."
(RE, No. 14, para. 4; RE, No. 5, p. 3, para. 3). Thus, at the Commission's November 20, 1989 meeting, Dibner's application was approved with modifications, modifications which mainly ensured compliance with the existing zoning regulations. (RE, No. 5). "Thirteen (13) lots shall be permitted, as determined by the Commission, pursuant to evidence submitted by the applicant." (RE, No. 5, p. 3, para. 2).
(b) 29-13C and 29-27
Section 29-27 of the Wilton Zoning Regulations sets the standards for a lot width, depth and setback requirements for a R-2A District. The average width/depth of a lot in this zone is 200 feet. Wilton Zoning Code, 29-27. Wilton Zoning Code 29-13C states:
 All buildings and building lots in a conservation development shall comply with the area coverage and other dimensional standards required in the R-1A Residential District, except that any lot located within a conservation development abutting the boundaries of such development shall meet all normally applicable lot width, lot depth and setback requirements of the R-2A Residence District.
The plaintiffs allege that lots 5, 9, 10 and 13 do not meet the 200 feet width requirement and therefore the Commission should have denied the subdivision application for noncompliance. (Plaintiff's Trial Brief, p. 15). The minutes of the Commission's November 20, 1989 meeting state that "Lot #5 shall be eliminated because it does not meet the applicable R-2A setback and lot width requirements pursuant to Section29-13.D. of the Wilton Zoning Regulations." (RE, No. 5, para. 3). During the Commission's November 13, 1989 meeting,
 Commissioner Quincy noted that the draft eliminates Lot #5 as a building lot but does not instruct as to the distribution of that land. Mr. Juretus [the Town Planner] commented that . . . the Planners did not want to be presumptuous and dictate how the land of Lot 5 should be distributed; let the applicant decide that question. When they revise those lots it becomes a judgment of Mr. Juretus if the area is rearranged so much that it requires going back to P Z for resubdivision.
CT Page 1107
(RE, No. 6, para. 1).
During the September 18, 1989 public hearing, and in a letter dated September 19, 1989, Mr. O'Brien, a subdivision land surveyor, stated that "Lot 10 does meet the width requirements for a R-2A Zone." (RE, No. 59, p. 40; RE, No. 11, attachment 3). Mr. O'Brien also said that Lot 9 met the requisite width requirement. (RE, No. 59, p. 40).
In Tanner v. Conservation Commission, 15 Conn. App. 336, 337-38
(1988), the "plaintiffs presented testimony of two professional engineers, a soil scientist and a biologist. These were the only expert witnesses who offered evidence at the hearing." The court stated that while it recognized "that an administrative agency is not required to believe any of the witnesses, including expert witnesses Manor Development Corporation v. Conservation Commission, 180 Conn. 692, 697 (1980); it must not disregard the only expert evidence available on the issue when the commission members lack their own expertise or knowledge." Id. at 341.
In the public hearing, the plaintiff's attorney stated that the applicant avoids having Lot 13 abut two lots in a R-2A zone by placing a ten foot strip as a buffer between the properties. (RE, No. 59, p. 58). The effect of this under 29-13C is that Lot 13 is only subject to R-1A area and dimensional standards, which are not as stringent as R-2A requirements. (See Wilton Zoning Code, 29-27 and RE, No. 47).
Other than the argument of plaintiffs' counsel at the hearing, there was not any mention of Lot 13 not complying with 29-13C. The town planning staff's report did not comment that Lot 13 violated 29-13C. (RE, No. 14). Likewise, the comments from the Conservation Commission, Department of Environmental Health, and Director of Public Works did not mention Lot 13 as an area of concern in regard to 29-13C. (See RE, Nos. 16-18). Thus the commission correctly determined that all lots, except Lot 5, which had to be eliminated from the plan, were in compliance with the width requirements.
3. Forty-Six Conditions
The plaintiffs contend that the Commission had no authority, under Conn. Gen. Stat. 8-26, to approve Dibner's application contingent upon forty-six separate conditions. The plaintiffs further allege that even if Conn. Gen. Stat. 8-26 did grant the Commission such authority, the numerous conditions were not mere modifications but an entirely new application.
Conn. Gen. Stat. 8-25 provides that the land to be subdivided shall be of such character that it can be used for building purposes without danger to health or the public safety. Conn. Gen. Stat. 8-26 provides that the commission shall approve, modify and approve, or disapprove any subdivision or resubdivision application. Furthermore, the Wilton Land CT Page 1108 Subdivision Regulations specifically permit the Commission to approve subdivision applications with conditions. "Within sixty-five (65) days of the date of the public hearing on the application, the Commission will approve, modify and approve, or disapprove and subdivision application by resolution which will set forth, in detail, any conditions to which the approval is subject, or the reasons for disapproval" Wilton Land Subdivision Regulations, 7D.
"In order to determine whether the condition in question was within the authority of the Commission to impose, we do not search for a statutory prohibition against such an action; rather, we must search for statutory authority for the action." Moscowitz v. Planning Zoning Commission, 16 Conn. app. 303, 308 (1988) (citations omitted). "We must note that it is the nature of the underlying action taken by the planning commission that will determine its legality, not whether it is phrased in terms of a `modification' or `conditional approval'." Id. at 311.
In Moscowitz, the Planning and Zoning Commission had approved a prior subdivision application on the condition that the parcel would not be resubdivided. A notation, signifying this condition was placed on the 1979 subdivision map. Subsequently, the plaintiff's application for a resubdivision was denied because of the restriction on the subdivision map which prevented the lot from being resubdivided. "The imposition of the restriction notation by the [Planning and Zoning Commission] in this case is neither a `modification', within the generally understood meaning of the term, nor does it bear a rational relationship to the enumerated health, safety and public welfare considerations set forth in General Statutes 8-25." Id. at 311. Thus, the court held that the Commission did not have the authority to impose conditions restricting future subdivisions and therefore the condition was void.
In Carpenter v. Planning Zoning Commission, 176 Conn. 581
(1979) the Commission approved a subdivision application subject to the approval of the highway superintendent and the posting of a bond. In this case it was determined that the Commission was not "confronted with any local regulations . . . which would authorize the imposition of conditions on a subdivision approval." Carpenter, 176 Conn. at 592. "We have held, albeit in a different context, that commission action which is dependent for its proper functioning on action by other agencies over which the zoning commission has no control cannot be sustained unless the necessary action appears to be a probability." Id. The issue in Carpenter was whether the commission's approval of the subdivision application subject to a condition did not constitute approval, modification and approval or denial such that the commission failed to act within sixty-five days, thereby resulting in automatic approval of the application as proscribed in Conn. Gen. Stat.8-26.
In Nicoli v. Planning and Zoning Commission, 171 Conn. 89, 90 (1976), the defendant Commission approved the plaintiff's subdivision application on the condition that no zoning or building permit be issued until the CT Page 1109 the proposed public road within the subdivision is connected to the public highway. The Commission found the inclusion of the condition "essential for the protection of the public health, safety and welfare of future residents." Id. at 94. "The imposition of subdivision control is an exercise of the police power, and it seeks to accomplish the orthodox ends of the police power by serving the health, safety, morals and general welfare of the community." Raybestos-Manhattan, Inc. v. Planning and Zoning Commission, 186 Conn. 466, 471 (1982) (Commission had the authority to require the extension of driveways in order to protect the health, safety and welfare of the inhabitants). Commissions "can approve the application exactly as it was submitted it can make changes to the application to ensure compliance with the subdivision regulations . . . then approve the application as so modified or it can disapprove the application outright." Carlson v. Fisher, 18 Conn. App. 488, 496-97
(1989).
The court in Blaker v. Planning and Zoning Commission, 212 Conn. 471, 4821-83 (1989) held "that the phrase reasonably conditional . . . contemplates giving the other agency, over which a Planning and Zoning Commission has no control, the opportunity to review the [application], thereby furthering the goal of cooperative action among municipal agencies, and that the record need not indicate whether [that agency] is likely to approve the [condition]." Thus, the court did not intimate that "in order to be valid, conditional approval requires evidence that the other agency will act favorably on the future request." Id. at 482.
In Vaszauskas v. Zoning Board of Appeal 215 Conn. 63 (1990), the board relied upon Blaker when it imposed conditions on the granting of variances. If it is concluded "that the board lacked the authority to impose the conditions[s], [they] may be revoked, set aside and declared to be void and of no force." Vaszauskas, 215 Conn. at 65-66. "The imposition of a void condition, however, does not necessarily render the whole decision illegal and inefficacious." Id. at 66.
It would unduly lengthen this memorandum to list all of the forty-six conditions imposed by the Commission. However, a review of the conditions illustrates that the majority of the conditions list requirements that either ensure compliance with zoning regulations or address public safety and welfare concerns.
Conn. Gen. Stats. 8-25 and 8-26 and Wilton Land Subdivision Regulations, 7D provide statutory authority for the Commission's action. Unlike the restriction in Moscowitz, the conditions in this case bear a rational relationship to the enumerated health, safety and public welfare considerations set forth in Conn. Gen. Stat.8-25. (See RE, No. 5). According to Blaker there is no need for the record to indicate whether the conditions will probably be approved.
The Commission acted within the authority given to it by the state and town of Wilton and there is ample evidence in the record to support CT Page 1110 the Commission's approval of defendant Dibner's application subject to the forty-six conditions.
4. Ex Parte Communication
As mentioned earlier, "once it has been demonstrated that an improper ex parte communication has occurred, a presumption of prejudice arises" and the burden shifts to the party who is "seeking to uphold the validity of the commission's decision." Blaker, 212 Conn. at 480. In Blaker, the commission granted an application for a change of zone and a special permit. After the last of the three public hearings, the attorney for the applicant sent a letter to the commission, but not the opposing counsel, disagreeing with the staff's conclusion. "No additional public hearing was scheduled to give the opponents . . . an opportunity to refute" the applicant's claims. Id. at 475. Despite the defendant's argument that the ex parte evidence pertained to a procedural question, the court concluded "that the commissions receipt of the ex parte evidence was improper. Id. at 478. The court held that "the applicant's ex parte communication relieved the aggrieved party of the initial burden of demonstrating that the commission acted illegally and shifted the initial burden to the applicant to demonstrate that the communication was harmless." Id. at 473.
"Zoning boards are entitled to receive technical assistance when deciding on matters beyond their expertise, and this information may be received and discussed in executive session."
Carlson v. Fischer, 18 Conn. App. 488, 503 (1989). "The use of such assistance . . . cannot be extended to the receipt, ex parte, of information supplied by a party to the controversy without affording his opposition an opportunity to know of the information and to offer evidence in explanation or rebuttal." Blaker, 212 Conn. at 478.
In Wasicki v. Zoning Board of the City of Stamford, 163 Conn. 166,170-71 (1972), after the public hearing and at the zoning board's executive session, the defendant applicant was allowed "to press its substantial and partisan interest in the ultimate decision of defendant board to the exclusion of the plaintiffs . . . [and that] meeting was the substantial and predominant factor in overcoming the hesitancy of the board and in persuading it to reverse its previous decision." At this meeting the applicant addressed issues that were raised and discussed in the public hearing. The court held that "the purpose and objectives of a public hearing were defeated." Id. at 174.
On September 18, 1989 a public hearing was held regarding Dibner's application. (RE, No. 59). At the Commission's October 30, 1989 meeting, the Commissioners engaged in a general discussion about the feasibility of Dibner's application. Near the end of this meeting, "Commissioner Benson commented Mr. Juretus needs to know whether the Commission wishes him to draft an approval with modifications or a denial without prejudice." (RE, CT Page 1111 No. 8, p. 3). In response Dibner's attorney "noted that his client has spent one and a half years developing this application; they had met with the Residential Site Plan Review Subcommittee and Town agents and have withdrawn two previous applications to revise the plan in accordance with suggestions from Town Staff." (RE,. No. 8, p. 3). Immediately thereafter, "Commissioner VanAlstyne commented it would be appalling, in his opinion, to deny without prejudice; the draft resolution should be to approve with modifications." (RE, No. 8, p. 3). "Chairman Shidler instructed the Staff to draft an approval with conditions." (RE, No. 8, p. 3).
The record also reflects that Steven Trinkaus, a professional engineer who testified as an expert witness for the applicant, was present at the Commission's November 13, 1989 meeting. Commissioner Quincy moved, and Commissioner VanAlstyne seconded, a motion "to waive the maximum grade of the cul-de-sac of Woodway Lane to allow a grade greater than 5% in some places." (RE, No. 6, para. 6). Pursuant to this motion:
 Commissioner Gould commented she thinks an increase in allowance of grade for the cul-de-sac is not justified. What is the finished grade to be? Steven Trinkaus . . . explained that at the throat of the junction of Woodway Lane and the cul-de-sac the grade would be 7% for a distance of about 20'; the majority of the cul-de-sac would be 5% grade. The Motion was called and carried by more than a 3/4 majority vote of the entire commission . . . Commissioners Gould and Benson voted opposed.
(RE, No. 6, paras. 6 and 7).
Based on the Blaker test the defendant argues that the communications were not "improper" because they were statements that were already on record. The court in Blaker and Pizzola interpreted the communication "improper" as the "Commission could not properly consider additional evidence submitted by an applicant after the public hearing without providing the necessary safeguards guaranteed to the opponents of the application and to the public." Blaker, 212 Conn. at 471 (emphasis added); Pizzola v. Planning Zoning Commission, 167 Conn. at 207-208 (commission requested that the applicant provide a traffic report; opponents never examined the report).
The court finds that the plaintiffs have met their burden of proof by demonstrating that improper ex parte communications occurred after the public hearing. The burden has shifted to the defendants, who must show how that the ex parte communications did not prejudice the plaintiffs.
It is acknowledged that the plaintiffs and public were given the opportunity to examine and/or address both of these ex parte issues, either before or during the public hearing. (RE, No. 59, pp. 1-9; RE, No. 14, para. 18; RE, No. 11, attachment 2, p. 2; RE, No. 5, p. 3, para. CT Page 1112 10).
The minutes of the October 30, 1989 meeting show that the Commission could have been persuaded by the attorney's "speech/comment." The court is unable to determine whether prior to the attorney's comment, the commission would have approved the application; and after the attorney's comment, whether two Commissioners would have responded as they did regardless of the attorney's ex parte comments. The court finds that the attorney's ex parte comments were prejudicial.
The defendants have not sustained their burden of proving that the ex parte communications were harmless. Accordingly, the plaintiffs' appeal is sustained.
LEONARD M. COCCO, JUDGE.