[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
STATEMENT OF CASE
Plaintiffs Janet N. O'Brien, Theresa A. Kovel, Ettore Avena, Allan H. Kiem and Karin Kiem, abutting landowners of the subject property, appeal from a decision of the Planning Commission of the Town of Old Lyme, approving the defendant Gary Smith's application for a subdivision and special exception for a Planned Residential Cluster Development (hereinafter "PRCD").
ISSUE
Whether the defendant old Lyme Planning Commission acted illegally, arbitrarily or in abuse of discretion when it approved the defendant, Gary Smith's application for a subdivision and for a special exception for a Planned Residential Cluster Development.
FACTS
The following facts are taken from the Return of Record (hereinafter "ROR):
On January 25, 1990, the defendant, Gary D. Smith (hereinafter "the applicant") filed an application for subdivision approval and special exception with the defendant, Old Lyme Planning Commission, seeking approval of a planned residential cluster development (PRCD) entitled "Peppermint Ridge" (ROR #53). The application proposed a cluster development of 47 individual residential lots to be located on a CT Page 8597 97.4 acre tract of land.
A public hearing on the application was opened on March 8, 1990 (ROR #39) and was continued to April 5, 1990 (ROR #9, p. 91, ROR #26). At the conclusion of the testimony on April 5, 1990, the Commission closed the public hearing (ROR #26, p. 92).
On May 17, 1990, the Commission held a special meeting wherein it considered Smith's application (ROR #6). At this meeting, Linda Krause, the Planning Consultant from Connecticut River Estuary Regional Planning Agency (CRERPA), submitted a report outlining several issues and concerns with the application (ROR #6, Attachment B), as well as a written interpretation of the planned residential cluster development regulations (ROR #6, Attachment A). The minutes of the meeting indicate that there was some participation at this meeting by the applicant and his attorney[1] (ROR nos. 4, 5, 6).
Notice of the Commission's decision was published in the New London Day on May 30, 1990 (ROR #3). On June 14, 1990, the plaintiffs, abutting landowners, filed the present appeal, contending that the Commission acted illegally, arbitrarily and in abuse of discretion in that:
 (a) The Planning Commission entertained and relied upon improper ex parte communications between the Applicant and the Planning Commission after the Public Hearing was closed on May 17, 1990, in violation of Conn. Gen. Stat. Sections 8-26d and 8-26e. The plaintiffs were not afforded the opportunity to know of the information and to offer evidence in explanation or rebuttal to same.
 (b) The Planning Commission's approval of a 42 lot subdivision located on private roads violates Section 5 of the Subdivision Regulations concerning private roads in that such property with private roads is explicitly limited to 30 lots due to the design and characteristics of the land.
 (c) Section 5 of the Old Lyme Subdivision Regulations and Article II, Section I of the Old Lyme Zoning Regulations upon which the Planning Commission relied are arbitrary and capricious as applied by the Commission to the application.
CT Page 8598
 (d) The Planning Commission failed to state upon its records the reason why it waived its Subdivision Regulations Sections 5.1 and 5.2 in violation of Conn. Gen. Stat. Section 8-26.
The defendant Commission, in its answer, denies that it acted illegally, arbitrarily and in abuse of discretion in the manner stated above.
In the brief submitted by the plaintiff, only arguments (a), (b) and (d) were addressed. Since issues not briefed are considered abandoned, see State v. Ramsundar,204 Conn. 4, 16 (1987), DeMilo v. West Haven, 189 Conn. 671, 681-82
n. 8 (1983), only those arguments will be addressed in this memorandum.
DISCUSSION
A. Aggrievement
"(Connecticut General Statutes) Section 8-8 allows aggrieved persons to appeal from decisions of zoning authorities to the Superior Court." Smith v. Planning Zoning Board,203 Conn. 317, 321 (1987); Connecticut General Statutes Section 8-8
(Rev. to 1989, as amended by Conn. Pub. Acts No. 89-356, Section 1 (1989)). "The appeal will be dismissed unless the applicant alleges and proves aggrievement. . . . Abutting landowners or landowners within a radius of one hundred feet of the land involved in any decision of the zoning board are considered automatically aggrieved and have standing to appeal a decision of a zoning board without having to prove aggrievement." Id.
At the hearing on this appeal, the parties stipulated that the plaintiffs' property abuts the applicant's property. The court then made a finding of aggrievement.
B. Timeliness
A party taking an appeal must do so within fifteen days from the date that notice of the decision was published. Connecticut General Statutes Section 8-8 (b) (Rev. to 1989, as amended). This appeal is timely brought as the Commission's decision was published on May 30, 1990 and the defendants were served on June 13, 1990. See Conn. Pub. Act No. 90-286, Sections 1, 3, 9 (1990).
C. Scope of Judicial Review CT Page 8599
A trial court is not at liberty to substitute its judgment for that of an administrative tribunal. Frito-Lay, Inc. v. PZC, 206 Conn. 554, 572-73 (1988). The court is only to determine whether the agency has acted illegally, arbitrarily or in abuse of its discretion. Id. at 573. The court is simply to determine whether the record reasonably supports the conclusions reached by the agency. Burnham v. PZB, 189 Conn. 261, 265
(1985); Stankiewicz v. ZBA, 15 Conn. App. 729 (1988).
I. PLAINTIFF'S FIRST CLAIM — That the Commission held an illegal hearing on May 17, 1990 wherein it took evidence and heard argument from the applicant and his attorney from which the plaintiffs and the public were excluded.
The plaintiffs first argue that pursuant to Connecticut General Statutes Section 8-26d(a), when a hearing is held on an application, "such hearing shall commence within sixty-five days after receipt of such application. . .and shall be completed within thirty days after such hearing commences." The plaintiffs further argue that pursuant to Connecticut General Statutes Section 8-26e, a public hearing must be held on an application for a special permit or special exception and notice of the hearing must be published as provided therein. According to the plaintiffs, the Commission's May 17, 1990 special meeting was a hearing which was beyond the time limited by Connecticut General Statutes Section 8-26d(a), was not noticed as required by Connecticut General Statutes Section 8-26e and at which opponents to the plan were denied an opportunity to participate. The defendants argue that the plaintiffs and the general public were not denied their right of due process since the Commission did not receive additional evidence nor engage in impermissible communications after the conclusion of the public hearing.
The plaintiffs rely on Frito-Lay, Inc. v. Planning and Zoning Commission, 206 Conn. 554 (1988) for their argument that the May 17, 1990 special meeting was an illegal public hearing. In Frito-Lay, after the close of the public hearing, the Commission conducted several meetings on the subject application where additional testimony and evidence were presented to and considered by the Commission. In concluding that these meetings were illegal public hearings, the court stated:
 hearing can be a proceeding in the nature of a trial with the presentation of evidence, it can be merely for the purpose of presenting arguments, or. . .it can be a combination of the two. . . . Not only does a hearing connote an adversarial setting, but usually it can be said that it is, `any oral proceeding before a tribunal'. . . . . .Our cases CT Page 8600 consistently recognize the generally adversarial nature of a proceeding in which witnesses are heard and testimony is taken.
Id. at 567-68 (citations omitted).
In Carlson v. Fisher, 18 Conn. App. 488, 503 (1989), the court stated that ". . .zoning boards cannot consider additional evidence submitted by an application, without granting the opponents and public the opportunity to examine that evidence and to offer evidence in explanation or rebuttal." Carlson, supra, (citing Pizzola v. Planning Zoning Commission,167 Conn. 202, 207 (1974)). however, a commission may receive evidence from the town planner after a public hearing if the requested information is within the scope of the detailed plans presented at the public hearing. Hawkes v. Town Plan Zoning Commission, 156 Conn. 207, 212 (1968). The plaintiffs' first claim requires a factual determination of what took place at the May 17, 1990 meeting.
The plaintiffs argue that the events that transpired on May 17, 1990 were sufficient to constitute a Frito-Lay type hearing. Specifically, and in support of their position that new evidence was introduced, the plaintiffs refer to the report submitted by Linda Krause at the meeting (ROR #6, Attachment B). This report, identified as Attachment B to the Minutes of the May 17, 1990 special meeting (ROR #6), outlines several issues and concerns to be addressed in the Commission's discussion of the Peppermint Ridge PRCD application. The following concerns were noted: traffic, adequate ground water supply, sewage disposal, effect on property values due to real estate slump, impact on schools, storm water drainage, perpetual restrictions on open space use, Kiem right of way and driveway location, use private streets, overall density of PRCD, and consistency with community character. Other issues noted were a review of lots and possible conditions/modifications.
A second document prepared by Linda Krause was submitted at the May 17, 1990 special meeting. This document, identified as Attachment A to the minutes of the May 17, 1990 meeting (ROR #6), provides an interpretation of the PRCD regulations. The plaintiffs also rely on certain deposition testimony which was introduced at the hearing in support of their argument that the applicant and his attorney actively participated at the May 17, 1990 meeting.[2] Specifically, the following excerpts from the applicant's deposition are noted by plaintiffs:
 1. To show that the applicant and his attorney argued various alternatives CT Page 8601 during the May 17, 1990 meeting
 Q: What did you state to the commission concerning the combination of lots, you or your attorney?
 A: I think we requested that they consider combining Lots 43, 44, 45 and 46 into three lots, rather than two lots.
(Dep. Smith, p. 20, lines 19-24)
 A: They were asking for a reduction of two lots and I was suggesting a reduction of one lot.
(Dep. Smith, p. 33, lines 1-3)
 A: I think that's where my attorney stood up and blurted out the fact that we'd like to have a reduction to three rather than two.
 (Dep. Smith, p. 37, lines 24-25; p. 38, lines 1-2).
 2. To show that on May 17, 1990, the defendant, Smith, and his attorney presented evidence to the Commission
 Q: What did you state to the commission concerning the combination of lots, you or your attorney?
 A: . . .There was also probably some discussion regarding the size of the two lots as to whether some of it could be moved into open space versus the two lots being extremely large within the track. . . .
 (Dep. Smith, p. 20, lines 19-25; p. 21, lines 1-4)
 A: . . .The one thing that sticks out in my mind is Janie Marsh (a commission member) making some comments about whether there was room on the interior of the subdivision to be able to put the things that they wanted to have there, the mailboxes and refuse pickup.
CT Page 8602
(Dep. Smith, p. 35, lines 21-25; p. 36, line 1)
 A: I recollect the question in our direction, ours meaning Attorney Royston and myself, from Janie Marsh regarding the mailboxes and the refuse pickup being on-site and she was wondering whether there was sufficient room on-site to handle that, and the response was that we had no problems with doing that.
(Dep. Smith, p. 7, lines 9-16)
The defendants argue in response that the proposed subdivision and cluster development involved numerous and complex planning issues concerning storm water drainage, water and septic systems, interior roads, roadway intersection and open space considerations, each of which was fully discussed at the public hearings on March 8, 1990 and April 5, 1990 (Smith's Brief, p. 4, Commission's Brief, p. 4). According to the defendants, at the May 17, 1990 meeting, after extensive discussion by the Commission, there was brief communication with the applicant's attorney and with the applicant clarifying certain items on the plan, regarding imposition of conditions and regarding sequencing of the project for bonding purposes. (Smith's Brief, p. 1, Commission's Brief, p. 1).
At the hearing on the present appeal, Michael E. Dickey, a member of the Greater Brownslane Homeowners Association, testified that he was present at all of the meetings, including May 17, 1990. He then described what occurred on May 17, 1990.
According to Mr. Dickey's testimony, the meeting on May 17, 1990 lasted approximately one and one-half hours. Other members of the Greater Brownslane Homeowners Association were present, but none were asked to speak at the meeting. During the meeting, questions involving the placement of mailboxes, refuse pickup, clearing of brush, paving of roads in the development, relocation of surface water drainage and the combination of lots were directed to the applicant. At one point, the applicant and Commission member Jane Marsh stood at the table and examined certain maps, discussing the combination of lots. Mr. Dickey indicated that all of the conversations which took place involved whether the applicant and his attorney would agree to certain conditions of approval.
Mr. Dickey stated that the applicant's conversation with Commission member Jane Marsh at the table lasted CT Page 8603 approximately ten minutes.[3] He stated that the conversation with Attorney Royston lasted a couple of minutes. It was acknowledged during the testimony that no new exhibits or documents were received by the Commission.
At the hearing on this appeal, Mr. Dickey's notes from the May 17, 1990 meeting were marked as Defendant's Exhibit 1. Nothing in these notes indicates that the applicant engaged in a conversation directly with the Commission. Rather, on page 5 of the notes, 6 items are listed as terms agreed to by Attorney Royston and the applicant.
Based on the foregoing, what took place on May 17, 1990 was not a Frito-Lay type hearing involving the receipt of new and additional evidence. Rather, what occurred on May 17, 1990 was the clarification of certain issues which had been fully discussed at the public hearings on March 8, 1990 and April 5, 1990. The present case is distinguishable from Pizzola v. Planning Zoning Commission, 167 Conn. 202 (1974) and Wasicki v. Zoning Board, 163 Conn. 166 (1972) which are relied upon by the plaintiffs. In Pizzola, after the close of the public hearing, the Commission requested the applicant for a zone change to provide two reports, one of which was a traffic survey prepared by the traffic consultant of the applicant's own choice and expense. This report was then considered by the Commission in executive session. Pizzola, 167 Conn. at 204.
In Wasicki, the applicant filed an application requesting approval to amend site plans for a restaurant which had been originally approved by the defendant Board the previous year. After the public hearing took place, an executive session was held by the Commission in which representatives of the applicant but no opponents to the application were asked to participate. Wasicki, 163 Conn. at 169. At that session, there was an extended discussion regarding the numerous failures of the defendant to satisfy the various conditions imposed at the time of the Board's approval of the original application. In response, the representatives of the applicant offered explanations for the defaults and in some instances, promised corrective action. The application was then approved with certain conditions. Wasicki, 163 Conn. at 169-70.
Unlike the present case, both Pizzola v. Planning Zoning Commission, 167 Conn. 202 (1974) and Wasicki v. Zoning Board, 163 Conn. 166 (1972) involve the submission of additional testimony and evidence after the close of the public hearing.
Finally, the Commission which is composed of laymen, properly sought the technical assistance of Linda Krause, the planning consultant, in carrying out its responsibilities. CT Page 8604 Hawkes, 156 Conn. at 212; see also Spero v. Zoning Board of Appeals, 217 Conn. 435, 444 (1991).
Therefore the plaintiffs' first argument must fail.
II. PLAINTIFFS' SECOND CLAIM — That the Commission violated its Regulations, wherein it approved a 42 lot subdivision in an area specifically restricted to a maximum of 30 lots by its regulations.
The plaintiffs argue that the Planning Commission could not approve a 42 lot PRCD served by private roads since Section 5.1.1 of the Subdivision Regulations limits the number of lots in a subdivision with private roads to 30. (Plaintiffs' Brief, p. 15-17). Furthermore, according to the plaintiffs, Section I.14.3 of the PRCD regulations effectively adopts Subdivision Regulations Section 5.1.1 limiting the number of lots on private roadways to 30. (Plaintiffs' Brief, p. 16). Section I.14.3 of the PRCD regulations provides:
 I.14.3 Interior Streets: All interior streets and driveways within a PRCD area shall be private roads owned in the manner prescribed by, and otherwise complying with the requirements of Section 5 of the Subdivision Regulations pertaining to streets within a subdivision.
However, the plaintiffs, in making this argument, have failed to consider Section I.8 of the PRCD regulations, which explains the permissible number of lots within the boundaries of any PRCD. Section I. 8 provides:
 Density: The maximum number of dwelling units permitted within the boundaries of a PRCD shall be equal to one hundred ten percent (110%) of the figure obtained by dividing the Net Building Area within such PRCD by the minimum number of square feet of lot area allowed under these regulations for the Underlying Zoning District in which such PRCD is located. If a PRCD shall be located in more than one Underlying Zoning District, such maximum number of dwelling units for the entire PRCD shall be the sum of one hundred ten percent (110%) of the separate figures obtained for each Underlying Zoning District containing part of the PRCD by dividing the number of square feet of the PRCD's Net Buildable Area lying within such CT Page 8605 district by the minimum number of square feet of lot area required under these regulations for such district.
At the meeting on May 17, 1990, Linda Krause submitted a staff memorandum entitled "Interpretation of PRCD Regulations." (ROR #6, Attachment A). This report contains the following discussion:
 A. Basis for determining maximum number of dwelling units
 Zoning Section I.2.5 states that one objective of PRCD regulations is to allow flexibility of design ". . .without increasing the number of units that could be legally constructed on a particular tract of land under these (Zoning) regulations as read without (the PRCD section). . . ."the density formula in Section I.8 is an effort to calculate that number mathematically. The number of units/lots allowed on a tract of land under zoning regulations is based on the conventional development with public streets at the minimum lot size prescribed for the zone (either 40,000 or 80,000 square feet). Public streets are used as the basis for determination, since it is the PRCD section itself that requires private streets, and reading the regulations without that section, there is no provision in zoning regulations for private streets. THIS is the number which should be used when considering compliance with Section I.2.5. Although the PRCD regulations require that interior roads be private streets constructed to the standards of Section 5 of the subdivision regulations, this PRCD construction standard stands by itself and should not be confused with any aspects of subdivision regulation concerning number or size of lots on private streets which may have been imposed separately by the Planning Commission. To make this distinction clear, Section 4.19 of the Subdivision Regulations points out that subdivision provisions concerning rear lots or lots on private streets will conflict with PRCD requirements, and that the PRCD requirements have priority, at the Planning Commission's CT Page 8606 discretion.
(ROR #6, Attachment A).
 The report further states: D. Private Streets
 The PRCD regulation (Section I.14.3) requires that all interior streets in a PRCD be private roads and be constructed to private road standards. Section 14.3 requires that the streets meet private road requirements, not that the lots on private streets meet the conditions of the subdivision regulations. Subdivision Section 4.19 specifically recognizes that subdivision requirements for lots on private streets will be in conflict with PRCD criteria.
(ROR #6, Attachment A).
Based on the foregoing, it appears that there is a conflict between Section 5.1.1 of the Subdivision Regulations and Section I.8 of the PRCD regulations. In case of a potential conflict, Section 4.19 of the Subdivision Regulations provides:
 4.19 PLANNED RESIDENTIAL CLUSTER DEVELOPMENT (PRCD). As authorized by the Old Lyme Zoning Regulations, the Planning Commission may, in considering an application for Special Exception under the provisions of Planned Residential Cluster Development (PRCD), approve an application which would ordinarily be in conflict with certain provisions of these subdivision regulations. Such approval of a PRCD application shall be based on the Commission's determination that the PRCD development more fully meets the objectives set forth in the zoning regulations for Planned Residential Cluster Development than if all provisions of the subdivision regulations were to be complied with in full. In particular, and as an example, the Commission may approve minimum lot sizes and other design requirements consistent with the zoning regulations despite conflicting provisions concerning rear lots or lots on private streets set forth elsewhere in these CT Page 8607 regulations.
Similarly, Section I.12.3 of the PRCD regulations provides:
 I.12.3 Possible Conflicts: If the requirements of this Section I are in conflict with other sections of this article or with other articles of these regulations, the requirements of this section shall prevail. In the event of a conflict between any provision of these regulations and any provision of the Subdivision Regulations, these regulations shall take priority as respect a PRCD.
Both sets of regulations are therefore clear that when a conflict exists between the subdivision regulations and the PRCD regulations, the PRCD regulations control. Therefore the Commission did not act illegally, arbitrarily or in abuse of discretion where it refused to apply the 30 lot maximum rule pursuant to subdivision regulation section 5.1.1.
The plaintiffs next argue that the Commission's approval of the 42 lot PRCD was arbitrary and capricious in that the Commission made no finding pursuant to Subdivision Regulations Section 4.19 that a 42 lot subdivision more fully meets the zoning PRCD objectives than a 30 lot subdivision (Plaintiff's Brief, p. 17-19). However, the 30 lot requirement of the subdivision regulations only applies to private road subdivisions. Using the proper standard pursuant to Subdivision Regulations Section 4.19, the approval of a PRCD application "shall be based on the Commission's determination that the PRCD development more fully meets the objectives set forth in the zoning regulations for Planned Residential Cluster Development than if all provisions of the Subdivision Regulations were to be complied with in full," not merely those applicable to a 30 lot, private road, subdivision. (emphasis added). The record supports a conclusion that the Commission made such a determination. The minutes of the May 17, 1990 meeting state that "(Commission Chairman) B. Deitrick reviewed the objectives within the PRCD regulations, point by point, Commission members agreed that with the requested changes and modifications, the plan was in compliance with each objective." (ROR #6).
Therefore the record supports a conclusion that the Commission did not act illegally, arbitrarily or in abuse of its discretion in approving this PRCD subdivision.
III. PLAINTIFFS' THIRD CLAIM — That the Planning Commission failed to state upon its records the reason why it CT Page 8608 waived its subdivision regulations 5.1 and 5.2 in violation of Connecticut General Statutes Section 8-26. Connecticut General Statutes Section 8-26 provides, in pertinent part, that the regulations of planning commissions:
 may contain provisions whereby the commission may waive certain requirements under the regulations by a three-quarters vote of all the members of the commission in cases where conditions exist which affect the subject land and are not generally applicable to other land in the area, provided that the regulations shall specify the conditions under which a waiver may be considered and shall provide that no waiver shall be granted that would have a significant adverse effect on adjacent property or on public health and safety. The commission shall state upon its records the reasons for which a waiver is granted in each case.
Section 8 of the Subdivision Regulations of the Town of Old Lyme provides that upon affirmative vote of four (4) or more members of the Commission, a waiver of its regulations may be granted.
According to the plaintiffs, since Subdivision Regulation Section 5.1.1 provides that if a subdivision contains private roadways, the number of lots allowed in the subdivision is limited to 30, and because the PRCD which was approved permitted 42 lots to be built in a subdivision providing only private roadways, the Commission was required to waive its regulations pursuant to Connecticut General Statutes Section 8-26 and Section 8 of the Subdivision Regulations. Since the record reflects that the Commission failed to waive its regulations when it granted the special exception, the plaintiffs argue that the decision should be held invalid.
However, that no waiver was required in this case. As explained above, Section 4.19 of the Subdivision Regulations and Section 1.12.3 of the PRCD Regulations provided that in case of a conflict between the PRCD Regulations and the Subdivision Regulations, the PRCD Regulations take priority. Therefore, the Commission did not act illegally, arbitrarily or in abuse of discretion when it approved the 42 lot PRCD without waiving Section 5 of the Subdivision Regulations.
The court finds that the May 17, 1990 meeting was not an illegal public hearing. The evidence in the record supports CT Page 8609 the Commission's decision and accordingly the appeal is hereby dismissed.
HURLEY, J.
ENDNOTES